WILLIAM CALLAM v. THE CITY OF SAGINAW.

*Expenditures for public buildings—Consent of tax-payers.*

A city cannot be compelled by the Legislature to bear the whole expense of county buildings; public burdens must be equitably apportioned. But if the Constitution does not forbid and the Legislature authorizes such action, it is for the city to determine whether it will of itself establish improvements that are not exclusively for its own purposes, and which will accommodate to some extent the larger bodies with which it is identified.

A city council, if authorized by statute, can take action involving the expenditure of public money, without the approval of any other body, whether of tax-payers alone or of electors generally; and while it is proper and legal to provide that it may do so with the approval of the tax-payers, such a provision is not required by the Constitution.

No constitutional objection to legislation authorizing a city to take upon itself alone the entire expense of a county building can be based on the probability that such action may affect the subsequent removal of the county seat.

Under the Constitution a board of supervisors cannot raise more than $1000 annually for constructing or repairing public buildings. Act 35 of 1882, in authorizing the city of Saginaw to erect a county building and in providing that in case of the removal of the county seat the county should repay the amount expended, is defective.

Appeal from Saginaw. (Gage, J.) Jan. 5.—Jan. 17.

INJUNCTION bill. Complainant appeals. Reversed.

*Tarsney & Weadock* and *C. S. Draper* for complainant.

*D. P. Foote* and *Hanchett & Stark* for defendant. Municipalities may do such things, and acquire such property as will be for a public purpose, and at the same time for the local benefit or convenience: *Park Com'rs v. Detroit* 28 Mich. 228; *People v. Batchellor* 53 N. Y. 128; *Oliver v. Worcester* 102 Mass. 489; *Bailey v. Mayor* 3 Hill 531; *Jones v. New Haven* 34 Conn. 1; Cooley on Taxation 482; *State v. Tappan* 29 Wis. 679.

CAMPBELL, J. Complainant, a tax-payer of the city of Saginaw, filed his bill to restrain the issue of bonds and other action providing for the erection, at the sole expense of Saginaw city, of the court-house for Saginaw county. The bill relies on several grounds of illegality, which are chiefly the want of power to build for other than city purposes,—the vote of tax-payers instead of electors generally to sanction the debt,—and the lack of power in the board of supervisors to make the contract with the city for the building. Some other questions arise also.

The bill was dismissed and complainant appeals.

The statute under which the controversy arises is "An act to authorize the city of Saginaw to raise money for building a court-house therein for the county of Saginaw, and to authorize said county and city to contract with each other therefor." Approved March 14, 1882. Laws 1882 (Local), p. 7.

This statute allows the city to borrow $100,000 and erect a court-house, if a majority of property-holding tax-payers so vote. Bonds were thereupon to be issued and negotiated, and the money expended in accordance with a contract to be agreed on between the city and county, with such agreements as should protect the rights and interests of the city and county. In case the county seat should be removed, the county was required to pay to the city the amount expended, with interest as should be specified, and the parties were authorized to provide for sale or other disposition in favor of the county in case of removal. In case of removal the county was to refund to the city, with interest,

all of the expenditure, and the amount was to be raised by taxation—the city also raising money to pay the bonds, in the same way..

We do not think there is anything in the body of the act foreign to the purpose indicated by the title. The provisions appear to be harmonious and consistent.

Some of the objections go to the power of the Legislature to authorize a city to make such an improvement as the one in question. These, if well founded, would render the others unimportant. If not well founded, the other objections, if they exist, may be obviated by further legislation.

It is claimed, and is true, that the Legislature cannot compel a city to bear the whole expense of county buildings. Public burdens must be apportioned in some equitable way; and in general, county burdens are raised by uniform taxes on property. This principle is not questioned by either party, and we need not discuss it. Neither need we discuss the power to discriminate between favored and unfavored localities by compulsory taxes. The present law lays no compulsion on the city.

The question arises, therefore, whether a city can be authorized to raise by corporate funds and taxes the entire money required for a court-house for the county. The point is fairly presented, as the proposed uses are not joint, but separate, and in case of removal the county is to refund the entire expenses.

No precedents have been found precisely analogous. The power is rested by the defense on the validity of city expenditures for purposes of a public character, which make a city more desirable as a residence, promote its improvement and the increase of its taxable property and add to the comforts or prosperity of its inhabitants. It is claimed that the city would at all events be obliged to pay a proportionate share of the cost, as a part of the county; and that if the benefits of an improved building beyond a cheaper one will mainly aid the city where it is built, that may justify the assumption by the city of the whole expense.

There is no lack of authority for allowing municipal cor-
porations to aid, or in some cases to establish, improvements
which are not purely for municipal purposes.  Parks, edu-
cational buildings, pleasure grounds, highways, and other
works of use and embellishment are generally open to the
public at large, and would be of little advantage if they
were not.  It is this which draws people to cities and adds
to their business and population.  No doubt there is a line
between those expenditures which by long usage and con-
sent are deemed public, and those which cannot be so
regarded; but communities which have a reasonable respect
for the amenities and comforts of life are usually the
strongest.

It is also very common both in this country and in Eng-
land, from which we have drawn the principles of our com-
mon law, for cities, in building their municipal buildings, to
furnish accommodations, gratuitously or otherwise, for pub-
lic officers and bodies which do not represent the city.  It
is very common to find city halls and similar buildings used
for State and county court or executive purposes.  In
*Detroit v. Laughna,* 34 Mich. 402, we had occasion to dis-
cuss this subject somewhat, in regard to the Detroit House
of Correction, which is owned by the city of Detroit, but
controlled largely by the State, and receives prisoners from
the United States authorities and from other counties.  Such
examples are numerous.  It has never occurred to any one
that it was improper for cities to build with a view to these
enlarged facilities, and to accommodate the larger bodies
with which they were identified, by doing so.

It is easy to see that the only reason why this is done is
because the city as a city will derive benefit from having
these bodies accommodated generously within its limits.  No
one doubts the fact that the existence and occupation of
good public buildings in a municipality is profitable and
directly advantageous to it by making it a more important
business and social center, and by stimulating private
improvements which add directly to its revenues.

The question whether the city of Saginaw, which must,

at the present ratio of taxation, bear about one-fifth of the expense of a court-house, may be authorized to raise money enough to build the whole of it, does not therefore seem to be so much whether it can raise anything more than its ratable proportion for what is not strictly a municipal purpose, but how much it can raise without violating principle. It seems to us that if the door can be opened at all, this is not a matter for the courts to decide. The Legislature cannot compel a city to be generous to the State or county, but we do not think the Constitution forbids a city—if authorized by statute—from determining for itself whether such an investment of city money for purposes in which the city is directly concerned in part, will not be wise and profitable. If it may put up handsome instead of mean buildings for its own uses, and may accommodate the county in those buildings upon as easy terms as it chooses, we do not see that what is now proposed involves substantially any very different principle.

It is objected further that the tax-payers do not represent the city, and cannot bind it by their vote, as they are only a portion of the electors. It is to be remarked, however, that the Constitution, which in some cases requires a vote from the electors of the counties on financial questions, contains no such requirement as to cities, which usually act by their local Legislatures. If the present statute required the city council to act if the tax-payers should decide in favor of the building, a question would arise which does not now arise. Under this statute, while the approval of the tax-payers is a condition precedent it is nothing more. The council can do as they please about making an arrangement with the county. The Legislature might have given the council power to act without the approval of any other persons. We do not think that the approval of the tax-payers, who are for many purposes recognized as a class, can be regarded as corporate action, or as intended to bind the city. And we do not think this approval is an improper or illegal provision.

Neither do we perceive that there is any constitutional

objection on account of the supposed influence this action may have on a future proposal to remove the county seat. Such indirect influences are liable to arise from multitudes of different causes. The expenditure of large sums by the county itself in a particular locality would have the same tendency to render a change undesirable. We do not see that any legal principle is involved.

This statute is, however, in our opinion defective in not making adequate provision for binding the county by a contract. The money can only be used under the law in accordance with such a contract. Under the Constitution the supervisors have no power to provide for raising more than $1000 in one year for constructing or repairing public buildings. Under this statute the contract will bind the county, in case of removal of the county seat, to repay the entire expenditure, and this may, and probably must, exceed the constitutional limit, after making possible deductions.

This renders the legislation defective. It is not so defective, however, that the Legislature may not supply the defect. If reimbursement is contemplated provision must be made in accordance with the Constitution. If not, the city must be authorized to determine on the expenditure without such condition, by retaining the title or in some other way which may be deemed satisfactory. The past action, having been conditional, would not suffice without further action either by the city or by the electors of the county, as either plan should be determined on. The common council can be authorized to act alone and without any popular vote if deemed desirable by the Legislature.

The decree must be reversed, with costs of both courts and the proceedings enjoined as prayed.

The other Justices concurred.