(No. 28370.—

THE PEOPLE *ex rel.* The Sanitary District of Chicago, Appellant and Cross Appellee, *vs.* VICTOR L. SCHLAEGER, County Collector, Appellee and Cross Appellant.

*Opinion filed September 19, 1945—Rehearing denied Nov. 15, 1945.*

ERNEST BUEHLER, THOMAS F. DONOVAN, and·MEYER C. EDELMAN, all of Chicago, for appellant.

WILLIAM J. TUOHY, State's Attorney, (JACOB SHAMBERG, GORDON B. NASH, and FRED W. KLOMAN, of counsel), all of Chicago, for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

In 1933, the legislature passed an amendment to section 2 of the Australian Ballot Act. (Laws of 1933, p. 578.) Section 2 of that act, as so amended, is now section 16-2 of the Election Code. (Ill. Rev. Stat. 1943, chap. 46, par. 16-2.) By that section, as amended, it is provided that in counties having a population of 500,000 inhabitants or more, when an election is held for State and county officers, and the names of candidates for offices of municipalities, townships, park districts, school districts or sanitary districts whose territorial limits are less than such counties, appear upon the same ballot, such municipality, township, park district, school district or sanitary district shall pay a proportionate part of the cost of the printing and delivery of the ballots used within the territorial limits thereof, such proportionate part to be allocated and paid in the manner therein provided. The formula for allocating and distributing such cost as between the county and the municipalities or districts, including the sanitary district, set out in the section, is the ratio that the number of officers of the municipality or district bears to the whole number of officers elected on the ballot.

The section further provides that, within forty days after such an election is held, the county auditor shall render a bill to each municipality, township, park district, school district, or sanitary district, the names of whose officers appeared upon the same ballot, for their proportionate part of the cost of printing and delivering the ballots used in the election. It further provides a method for the arbitration of any dispute which may arise as to the fairness of the amount apportioned to the various districts. It then provides that each municipality and district shall make ample provision in its annual appropriation bills to cover the proportion of such expenses allocated to it, and that the warrant in payment thereof shall be made

payable to the county treasurer and shall be mailed to the county clerk, who shall credit the amount as a fee of his office. It further provides: "If, at the end of any fiscal year the municipality, township, park district, school district or sanitary district has failed to draw a warrant and send same to the county clerk as provided above, the county clerk shall certify to the county collector the amount due from such municipality, township, park district, school district or sanitary district as charged by the county auditor and the county collector shall withhold said amount from the general taxes due such municipality, township, park district, school district or sanitary district and credit the amount so withheld as a fee of the county clerk."

The term, "general election," as used in the act, is defined to mean any election held for the choice of national, State, judicial, district or county officers.

Beginning in the year 1934, the county auditor of Cook county prepared, and delivered to appellant, bills for its proportionate part of the cost of printing and delivering ballots for the general elections held in the years 1934, 1936, 1938, 1940, and 1942, in accordance with this statute. These bills were not paid by appellant. The county clerk certified to the county collector, each year, the amount due from the sanitary district, as determined by the county auditor.

In the year 1941, the county collector withheld the amounts certified from 1934 to 1940, inclusive, from the general taxes due to the sanitary district. In 1943, appellee, as county collector, withheld from the general taxes due the sanitary district the amount allocated to it as its proportionate share of the expense of printing and delivering the ballots used in the general election held in the year 1942, said amount having been previously determined by the county auditor and certified to appellee by the county clerk, in accordance with said statute. The aggregate amount withheld by appellee and his predecessors for the

cost of printing and delivering ballots was the sum of $23,541.79.

In 1933, the legislature also passed an amendment to an act entitled, "An Act in regard to elections and to provide for filling vacancies in elective offices." By said amendment section 75 was amended and sections 75a and 75b were added to the act. (Laws of 1933, p. 546.) This amended section is now section 13-11 of The Election Code. (Ill. Rev. Stat. 1943, chap. 46, par. 13-11.) By section 75, as amended, it was provided that, in counties having a population of 500,000 or more, if a municipal election is held on the same day and at the same polling places as any State or county election in which such municipality is located, and the same judges and clerks of election conduct the municipal election as conduct the county or State election, the municipality shall reimburse such county for a proportionate share of the compensation of the judges and clerks of such election. The term "municipality" is defined in said section to mean and include sanitary districts and other municipal corporations whose territorial limits are less than the county.

Section 75a provides that the county auditor shall determine the proportion of such expenses to be paid by each municipality, based upon the total number of officers and propositions voted upon. It further provides that each municipality shall make adequate appropriations each year for the payment of its proportionate part of the compensation of such judges and clerks of election, and, upon presentation of bills therefor by the county auditor, shall pay the same to the county clerk. It is then provided that at the end of any fiscal year, if any municipality has failed to pay its proportionate part of such compensation of judges and clerks of election, the county clerk shall certify the amount due to the county collector who, in making his settlement of local taxes with each municipality, shall deduct and withhold a sufficient amount to pay such com-

pensation, and shall credit the amount so withheld as a fee of the county clerk.

Section 75b provides for the arbitration of all disputes that may arise concerning the portion of compensation of the judges and clerks of election which is to be paid by any municipality.

The record shows that for the years 1934 to 1942, inclusive, appellee and his predecessors in office withheld from the general taxes due to the sanitary district, for its proportionate part of the compensation of the judges and clerks of election, in accordance with said statute, the sum of $193,643.44. This amount, when added to the amount withheld for the proportionate share of the sanitary district of the cost of printing and delivering ballots, amounted to the sum of $217,185.23.

On May 19, 1943, this suit was filed in the name of the People on relation of the sanitary district for a writ of *mandamus* to compel appellee, as county collector, to pay over to the sanitary district the said sum of $217,185.23. It was alleged in the complaint that the funds were withheld without authority of law.

To the complaint an answer was filed by the defendant, admitting the withholding of the aggregate sum of $217,185.23, as alleged in the complaint. The answer alleged that said funds were withheld and credited in accordance with section 2 of the Australian Ballot Act. To the answer, certain exhibits were attached showing the amounts withheld, the purposes for which they were withheld, and the method by which the amounts withheld were computed. A reply was filed to the answer alleging the invalidity of the 1933 amendment to section 2 of the Australian Ballot Act, on the ground that said amendment violated section 13 of article IV, and sections 9 and 10 of article IX of the constitution.

Upon a hearing, the trial court held that the 1933 amendment to the Ballot Act was valid; that the sum of

$23,541.79, withheld as the proportionate share of the cost of printing and distributing ballots and cards of instruction, was legally withheld, and as to said sum the writ was denied. The court further held that the sum of $193,643.44, for compensation of judges and clerks of election, was unlawfully withheld. A writ of *mandamus* was awarded against appellee, as county collector, directing him to pay said amount to appellant.

This appeal was taken by appellant from that part of the judgment holding the 1933 amendment to section 2 of the Australian Ballot Act valid, and that the sum of $23,541.79, was lawfully withheld from the taxes due appellant. A cross appeal was perfected by the county collector from that portion of the judgment awarding the writ of *mandamus* directing him to pay over to the sanitary district the said sum of $193,643.44.

The validity of the 1933 amendment to section 2 of the Australian Ballot Act is challenged by appellant on two grounds. The first is that the amendment creates a debt which is equivalent to the levying of a tax on the sanitary district for local corporate purposes, in violation of sections 9 and 10 of article IX of the constitution. The second ground on which the validity of said amendment is challenged is that the amendment, embraces more than one subject and subject matter which is not expressed in its title, and which is not germane to the act amended, in violation of section 13 of article IV of the constitution.

Taking up these contentions in the order stated, we first direct our attention to the purpose for which the expense is authorized. It is settled in this State that the creation of a debt which must ultimately be paid by taxation is the same in its effect as the imposition of a tax itself. (*People ex rel. Burow* v. *Block*, 276 Ill. 286.) Section 9 of article IX of the constitution authorizes the legislature to vest in municipal corporations the authority to assess and collect taxes for corporate purposes. Section 10 of

article IX provides that the general assembly shall not impose taxes upon municipal corporations or the inhabitants or property thereof for corporate purposes, but shall require that all the taxable property within the limits of municipal corporations shall be taxed for the payment of debts contracted under the authority of law, such taxes to be uniform in respect to persons and property within the jurisdiction of the municipality imposing the same.

The rule is definitely settled that if the purpose of the tax is local and not general, the legislature cannot impose the tax upon a municipality or the inhabitants or property thereof. It is only taxes for local corporate purposes which are within the purview of this constitutional limitation. Unless the act complained of imposes a tax for a local corporate purpose, it is not within the constitutional inhibition. *People ex rel. Moshier* v. *City of Springfield,* 370 Ill. 541.

Appellant takes the position that expenses incurred in holding municipal elections are incurred for a local corporate purpose. It further insists that the expenses of the elections here involved, which were withheld from the taxes due from the county collector to the sanitary district, were incurred in holding local municipal elections and were expenses incurred for local corporate purposes of the sanitary district. Appellee concedes that such expenses were incurred for local corporate purposes. He argues, however, that section 10 of article IX of the constitution contains a mandate to the legislature that it "shall require that all the taxable property within the limits of municipal corporations shall be taxed for the payment of debts contracted under authority of law." He then argues that when the residents of what is now the sanitary district voted to organize the district, they consented to be taxed for the purpose of raising funds to meet the necessary expenses of carrying into effect the law under which the district was organized; that the law under which the

district was organized contemplated and provided for the election of officers of the district; that the holding of elections for the purpose of selecting those officers is a' necessary incident to the organization and existence of the district, and that a debt incurred in holding such elections is a' debt contracted under authority of law within the purview of section 10 of article IX of the constitution.

Notwithstanding the parties here are in complete agreement that the expenses involved in this case created liabilities for local corporate purposes of the sanitary district, we cannot and do not accept this premise at all. The 1933 amendment to section 2 of the Australian Ballot Act, in so far as its applicable provisions are here involved, simply provides for the apportionment of the expenses of general elections between the county and the municipalities and districts participating in, and benefited by, such elections. The legislature has the right and the undoubted authority to apportion any part, or all, of the expenses of general elections against the sanitary district or other municipality in such manner as it may determine. Whether such sanitary district or other municipality is benefited by the holding of the election is wholly immaterial. The expenses of general elections are general governmental expenses. They are not expenses incurred for a local corporate purpose of the district or municipality. The local administration by a municipality of delegated governmental functions is, in a limited sense, the exercise of a local corporate function in that one of the purposes of a municipal corporation is the administration, as an agency of the State, of delegated governmental functions. It is in that limited sense only that it may be said to be a corporate purpose. The legislature may direct a municipality, as an agency of the State, to perform any governmental function of the State. In such case the municipality simply becomes an agency of the State. The power in all its aspects remains in the legislature, unchanged and unaffected

by the delegation to the agent. It is delegated to smaller municipalities only that it may be more effectively exercised. (*Board of Trustees* v. *Comrs. of Lincoln Park,* 282 Ill. 348.) It has been frequently held by this court that corporate purposes, within the meaning of the constitutional provisions here invoked, do not include functions which a municipal corporation performs in its governmental capacity as an agency of the State, although the performance of the duty will create a debt to be paid by local taxation. *People ex rel. Cannon* v. *City of Chicago,* 351 Ill. 396; *St. Hedwig's Industrial School* v. *County of Cook,* 289 Ill. 432; *People ex rel. County of Franklin* v. *County of Williamson,* 286 Ill. 44; *Chicago, Milwaukee and St. Paul Railway Co.* v. *County of Lake,* 287 Ill. 337; *Board of Trustees* v. *Comrs. of Lincoln Park,* 282 Ill. 348; *City of Chicago* v. *Manhattan Cement Co.* 178 Ill. 372.

In construing section 10 of article IX of the constitution, and in interpreting its meaning, this court has adopted the rule that the State may impose a duty on a municipal corporation which relates to the general welfare and security of the State, and even though the performance of the duty will create a debt to be paid by local taxation, such legislation does not contravene this constitutional provision. *Littell* v. *City of Peoria,* 374 Ill. 344; *People ex rel. Moshier* v. *City of Springfield,* 370 Ill. 541.

Section 10 of article IX of the constitution does not deprive the General Assembly of the power to impose taxes on municipal corporations for purposes not local in character but to obtain the performance of duties which promote the general welfare and security of the State. (*People ex rel. Cannon* v. *City of Chicago,* 351 Ill. 396.) The powers, duties and liabilities of municipal corporations, unless restrained by constitutional limits, are wholly under the control of the General Assembly. It may compel a municipal corporation to perform any duty which relates to the general welfare and security of the State,

although the performance of that duty will create a debt to be paid by local taxation. (*People ex rel. Cannon* v. *City of Chicago,* 351 Ill. 396.) The legislature has the power to apportion the expenses of conducting general elections among governmental subdivisions and incorporated municipalities. In the exercise of that power, it determined, by the 1933 amendment to section 2 of the Australian Ballot Act, that the expenses of printing and distributing ballots used in general elections in counties of 500,000 or more inhabitants, when the names of candidates for sanitary district offices appear on the same ballots as the names of candidates for State and county offices, should be apportioned between the county and the sanitary district within the county whose officers were elected at the same election. *Jacob* v. *City of Peoria,* 345 Ill. 222.

The 1933 amendment to section 2 of the Australian Ballot Act relates only to the apportionment of the expenses of general elections which the legislature had a perfect right to do. That amendment, by apportioning the expenses of printing and distributing ballots to be used in general elections, did not impose a liability incurred for local corporate purposes within the inhibitions of sections 9 and 10 of article IX of the constitution.

The next contention of appellant is that the 1933 amendment to section 2 of the Australian Ballot Act embraces more than one subject and contains subject matter not expressed in the title and which is not germane to the act amended, in violation of section 13 of article IV of the constitution. The title of the amendatory act is as follows: "An Act to amend section 2 of 'An Act to provide for the printing and distribution of ballots at public expense, and for the nomination of candidates for public offices, to regulate the manner of holding elections, and to enforce the secrecy of the ballot,' approved June 22, 1891, as amended."

The title of the act amended is as set forth in the title of the amendatory act. The subject expressed in that title is the printing and distribution of ballots at public expense; the nomination of candidates for public offices, and the regulation of the manner of holding elections and to enforce the secrecy of the ballot. It cannot be seriously contended that the provisions in the amendatory act, providing the manner in which the cost of printing and distributing ballots is to be paid, are not embraced within the title of the original act wherein the subject of the printing and distribution of ballots at public expense is expressed. An act with a single general subject indicated in the title may contain many provisions, however diverse, so long as they are not inconsistent with, or foreign to, the general subject, and may be considered in furtherance of such subject by providing for the method and means of carrying out the general object. The General Assembly must determine for itself how broad and comprehensive the object of the subject shall be and how much particularity shall be employed in the title defining it. *Public Service Co.* v. *Recktenwald,* 290 Ill. 314; *Perkins* v. *Board of County Comrs.* 271 Ill. 449; *Manaster* v. *Kioebge,* 257 Ill. 431; *People* v. *McBride,* 234 Ill. 146; *People ex rel. Longenecker* v. *Nelson,* 133 Ill. 565.

In *People ex rel. Broomell* v. *Hoffman,* 322 Ill. 174, it was contended that the provisions of the City Elections Act relating to the punishment of judges and clerks of election for contempt of the county court in failing to discharge their duties, was not a subject included within the title of said act. The title of the act there before the court was, "An act regulating the holding of elections and declaring the result thereof in cities, villages, and incorporated towns in this State." It was argued that there was nothing in the title to indicate that the act made the judges and clerks of election officers of the court, or conferred upon the court the power to punish such judges

and clerks for failure to discharge their duties. It was argued that these provisions were not germane to the title of the act. It was there said, "The purpose of the constitutional provision is accomplished when a law has but one general subject which is fairly indicated by its title. If the general subject indicated by the title reasonably covers the provisions of the act and is not calculated to mislead the General Assembly or the people it is a sufficient compliance with the constitutional requirements. Unless the act contains matters which have no proper connection with or relation to the title, or the title itself contains subjects without any proper relation to each other, the constitutional provision is not violated."

The provisions in the amendatory act, relating to the allocation and payment of the public expense incurred in the printing and distribution of ballots used in general elections, are clearly within the subject of the printing and distribution of ballots at public expense, and regulating the manner of holding elections and enforcing the secrecy of the ballot, expressed in the title of the amendatory act.

It is argued by appellant, however, that the effect of the provisions of the amendatory act, directing the county collector to withhold from taxes due municipalities the amount of such expense allocated to them, was to amend section 243 of the general Revenue Act, (Ill. Rev. Stat. 1933, chap. 120, par. 228,) as said section existed at that time. That section is now section 280 of the Revenue Act of 1939. (Ill. Rev. Stat. 1943, chap. 120, par. 761.) The contention is that everything contained in the 1933 amendment to section 2 of the Ballot Act, imposing obligations and duties upon the county collector, amends said section of the Revenue Act; that, in order to determine whether the county collector should be governed by the provisions of section 2 of the Ballot Act or the provisions of said section of the Revenue Act, a comparison of the two acts is necessary.

The provisions of said section of the Revenue Act, which it is claimed are amended by the amendment to section 2 of the Ballot Act, as it existed in 1933, are as follows: "The county collector shall on the first day of April and the first day of each and every month thereafter, pay over to the other proper authorities or persons the amounts in his hands, other than taxes paid under protest for which the court has not fixed the correct amount, and payable to them as taxes, not theretofore paid over: Provided that in counties under township organization, where no town collectors are elected, no fees or commissions shall be deducted by the county collector from taxes collected by him and heretofore authorized to be collected by town collectors, and all such taxes collected shall be paid over in full to the proper authorities or persons authorized by law to receive the same." Ill. Rev. Stat. 1933, chap. 120, par. 228.

The provision in said section that the county collector shall pay over to the proper authorities the amounts in his hands and payable to them as taxes, is certainly not in any way affected or altered by anything contained in the amendment of section 2 of the Ballot Act. The provision of said section providing that no fees or commission shall be deducted by the county collector from taxes collected by him and previously authorized to be collected by town collectors, and that such taxes shall be paid over in full to the proper authorities, only prohibits the deduction of such fees as were theretofore authorized to be paid to town collectors. The provision that all taxes collected shall be paid over in full to the proper authorities means that the county collector shall pay over the full amount. collected, less lawful deductions made therefrom, regardless of the fact that such deductions may be authorized by other and different statutes. (*People* v. *Wallace,* 291 Ill. 465; *People* v. *Wiltshire,* 92 Ill. 260.) The provisions of section 2 of the Ballot Act, which provide that the county

collector shall withhold from the taxes due the sanitary district the amount of its share of the cost of printing and distributing ballots, are not in conflict with this section of the Revenue Act. The two acts are *in pari materia* and must be construed together. The fact that such deductions are made under the provisions of the Ballot Act does not render that act amendatory of the applicable section of the Revenue Act. The amendment to the Ballot Act is not in conflict with said section of the Revenue Act. It merely supplements said section and is not inconsistent with it. Both acts may stand and be given full force and effect, and neither repeals the other.

The rule has been long settled in this State that section 13 of article IV of the constitution was not intended to forbid every enactment which, in any degree, however remotely, might affect prior laws on a given subject. To so hold would bring about a far greater evil than the one sought to be obviated. A subsequent act may have the practical effect of amending a prior act, or it may be substituted for it without violating this constitutional provision. *Badenoch* v. *City of Chicago,* 222 Ill. 71; *People ex rel. Stuckart* v. *Knopf,* 183 Ill. 410.

The amendment to section 2 of the Australian Ballot Act is complete in itself, and intelligible on its face. It shows exactly what the legislature intended. It does not repeal, even by implication, any provisions in said section of the Revenue Act. At most, it only modifies that section to the extent that the county collector is directed to withhold the amount certified as the portion of the cost of printing and distributing ballots allocated to the sanitary district, and to pay over to said district the amount remaining. It only supplements the section of the Revenue Act and gives the yardstick for determining how much of the taxes the county collector shall withhold and how much he shall pay over to the district. (*Nelson* v. *Hoffman,* 314 Ill. 616; *People* v. *Van Bever,* 248 Ill. 136.) The act of

1933, amending section 2 of the Australian Ballot Act, does not violate section 13 of article IV of the constitution. It is *in pari materia* with section 280 of the Revenue Act. Both acts are complete and both may stand and be given effect.

This brings us to the questions involved on the cross appeal. As already stated, the cross appeal was perfected by the county collector from that part of the judgment of the trial court awarding the writ of *mandamus* commanding him to pay to the sanitary district the sum of $193,643.44. This amount was made up of the amounts withheld by the county collector for the sanitary district's portion of the compensation of judges and clerks of election for services rendered in the general elections held in 1934, 1936, 1938, 1940 and 1942, under sections 75 and 75a of "An Act in regard to elections and to provide for filling vacancies in elective offices," as amended in 1933. The record shows that, in each year in which a general election was held, a joint statement or bill was prepared by the county auditor for the expenses covering the cost of printing and delivering ballots and the compensation of judges and clerks of election. In these statements or bills, the total amount of expenses incurred was set forth, and the portion thereof allocated to the sanitary district for the cost of printing and distributing ballots and for compensation of judges and clerks of election was set out separately. These bills, in so far as they related to the portion of the expenses allocated to the sanitary district for printing and distributing ballots, were prepared in accordance with, and under the authority of, section 2 of the Australian Ballot Act, as amended in 1933. In so far as they related to the portion of the compensation of judges and clerks of election allocated to the sanitary district, they were prepared in accordance with, and under the authority of, sections 75 and 75a of the act regarding elec-

tions and to provide for filling vacancies in elective offices, as amended in 1933.

There is no dispute as to the amounts of these bills. Neither is there any controversy that the bills represented the amounts allocated to the sanitary district by the county auditor, and are the amounts withheld by the county collector from taxes due the district.

No question is raised by appellant as to the validity of section 75 or 75a of the act relating to elections and to provide for filling vacancies in elective offices. The only contention made by the sanitary district, as cross appellee, is that the answer filed by the county collector did not specifically refer to, or rely upon, those sections of the statute as authority for withholding the amounts for compensation of judges and clerks of election. It is argued by cross appellee that this statute not having been specially pleaded or relied upon in the answer as authority for withholding the amounts representing the portion of the compensation of judges and clerks of elections withheld, cross appellant cannot, in this court, rely upon said statute. In support of this contention, cross appellee cites and relies upon *Bittner* v. *Field,* 354 Ill. 215; *Hill* v. *Siffermann,* 230 Ill. 19, and *City of Mattoon* v. *Noyes,* 218 Ill. 594. It is true those cases announce the well-known rule that a defense not made in the court below will not be considered in this court on review. They are not, however, authority for the contention that, in order for a defendant to rely upon a public statute as a defense, such statute must be specially pleaded in the court below. The rule announced in the above cases has no application to legal defenses based on public statutes.

The rule is well settled that, in *mandamus* cases, the burden is on the petitioner to show that he has a clear legal right to the writ. The writ will not issue to compel a public official to perform an alleged official act unless it

affirmatively appears that it is his clear duty to do so. (*Bengson* v. *City of Kewanee,* 380 Ill. 244.) The writ will not issue unless the party applying for it shows a clear legal obligation on the part of the party against whom the writ is sought to do the thing which the petitioner seeks to have done. *People ex rel. Albright* v. *Blair,* 292 Ill. 139.

In this case the burden was on the plaintiff to show that, as a matter of law, it was clearly entitled to the writ. It was incumbent upon the petitioner to show a clear legal right to have the defendant do the thing which, by the suit, it sought to coerce him to do. It was necessary, therefore, in this case, for the petitioner not only to show that the defendant had withheld the funds, but that he had no lawful authority for so doing. Before it was entitled to the writ of *mandamus,* it was necessary for the petitioner to show that there was no statute or lawful authority for withholding the funds.

The courts take judicial notice of all public acts without the necessity of pleading such acts specially. (*People ex rel. Nelson* v. *Taylor,* 281 Ill. 355.) The courts take judicial notice of public laws and it is not necessary to set out such laws or any particular section thereof in a pleading, in order to invoke the benefits of their provisions. *Hamalle* v. *Lebensberger,* 267 Ill. 602.

In the case of *People ex rel. Caton* v. *Ottawa Hydraulic Co.* 115 Ill. 281, it was contended that before a general statute could be relied upon, it should have been pleaded specially. The court there said the question is so elementary in its character that it hardly admits of serious discussion. Under the well-settled and fundamental rule, it was not necessary for the defendant to plead specially, in his answer, that the funds were withheld under the provisions of the applicable sections of the statute. On the contrary, the burden was on the petitioner to show that there was no applicable statute under which the funds were lawfully withheld.

It is our conclusion that the 1933 amendment to section 2 of the Australian Ballot Act is not subject to the constitutional objections urged against it. We are further of the opinion that the· county collector lawfully withheld the funds involved, for the portion of expenses of printing and distributing ballots allocated to the sanitary district under said amendment and that that portion of the judgment denying the writ must be affirmed. We further hold that under sections 75 and 75a of the act regarding elections and to provide for filling vacancies in elective offices, as amended in 1933, the county collector was authorized to withhold, from the general taxes due the sanitary district, the portion and share of the compensation of judges and clerks of elections, allocated to the sanitary district, in the amount of $193,643.44, for services in the general elections above referred to. The trial court erred in awarding the writ of *mandamus*.

· The judgment of the circuit court of Cook county is. affirmed in part and reversed in part.

*Judgment affirmed in part and reversed in part.*