FRED E. WILSON, ON BEHALF OF HIMSELF AND ALL OTHER TAXPAYERS OF THE CITY OF HIGH POINT AND COUNTY OF GUILFORD, v. CITY OF HIGH POINT AND COUNTY OF GUILFORD.

(Filed 12 June, 1953.)

**1. Taxation § 38a—**

A taxpayer of a municipality has the right to maintain an action to test the authority of the municipality to issue proposed bonds.

**2. Taxation § ½—**

The issuance of bonds by a municipality is but an incipient step in the exercise of its power of taxation, and necessarily involves its power to levy a tax to pay the principal and interest thereon.

**3. Taxation § 4—**

What is a necessary municipal expense within the meaning of Art. VII, sec. 7, of the Constitution of N. C., is a question of law to be determined by the courts, and although legislative construction of this provision is entitled to great weight, it is not binding.

**4. Municipal Corporations § 41—**

A municipality cannot expend tax revenue without the explicit or implicit authority of a constitutional statute. G.S. 160-1.

**5. Taxation § 1—**

A contract under which property of a municipality within the county would be taxed for the purpose of raising revenue to pay the total initial cost of erecting a building to be used jointly by the city and county for their respective governmental functions, and then subsequently included in a county-wide tax to defray the county's obligation, would result in taxing the property in the city twice for the same purpose, and would violate the rule of uniformity.

**6. Taxation § 3—**

The provisions of Art. V, sec. 4, authorizing the issuance of bonds by a municipality not to exceed two-thirds of the amount of bonds retired by it during the preceding fiscal year does not authorize a municipality to issue bonds, without a vote of the people, even within the limitation, if such bonds are not for a necessary municipal expense.

**7. Constitutional Law § 10b—**

While the Supreme Court will not hold an act of the General Assembly unconstitutional unless it clearly transgresses the fundamental law, it is its duty to declare an act unconstitutional if, after indulging every presumption in favor of constitutionality, the statute clearly contravenes the Constitution.

**8. Taxation §§ 4, 9—**

A municipality may not issue its bonds, without a vote of its people, for the purpose of providing revenue to pay the entire initial costs of a building to be used by the county and the municipality jointly in the discharge of their respective governmental functions, even though the county has entered into a contract with the city eventually to purchase the building from the city, since the discharge of the governmental functions of the county touches no phase of the municipal government, and therefore is not a necessary expense of the municipality within the meaning of Art. VII, sec. 7, and further would amount to taxing one governmental unit for the benefit of another.

**9. Appeal and Error § 40d—**

The Supreme Court will not discuss or decide questions not presented by the facts agreed, since to do so would be to render an advisory opinion.

APPEAL by plaintiff from *Sink, J.*, in Chambers in Greensboro, 9 April, 1953. GUILFORD.

This is a civil action instituted by Fred E. Wilson, on behalf of himself and all other taxpayers of the City of High Point and the County of Guilford, in which he seeks a permanent injunction to restrain both defendants from erecting a building for their joint use in the City of High Point, and to restrain the City of High Point from issuing bonds to pay the total initial cost of said building.

The City of High Point and the County of Guilford will be hereafter referred to as the City and the County. The City and County filed a joint answer.

It is admitted in the pleadings that Fred E. Wilson, then and now, is a citizen, resident and taxpayer of the City and County, and brings this action on behalf of himself and all other taxpayers of the City and County; that the City is a municipal corporation of the State of North Carolina, and the County one of the counties of North Carolina.

Counsel for the plaintiff and the defendant stipulated and agreed in writing that this action should be heard and decided by Sink, J., Resident Judge of the 12th Judicial District, in chambers in the courthouse at Greensboro, without a jury, upon the following statements of facts, which were declared to be the pertinent facts.

1. The 1953 General Assembly of North Carolina enacted a Public-Local Statute—See EXHIBIT A.

2. That defendants of the City of High Point and Guilford County have executed an agreement with each other—See EXHIBIT B.

3. That unless defendants are legally restrained, they will proceed as soon as practicable to perform the above contract and to cause the erection of the building provided for in said contract, and to pay for, use and dispose of the building and its site as provided in said contract.

4. That it will be necessary for defendant City of High Point to issue bonds to enable it to perform its part of the contract.

5. That defendants are of opinion that the building proposed to be erected is necessary for the efficient operation of the government of the City of High Point and of Guilford County and is a necessary expense and for a public purpose.

6. That two-thirds of the amount of bonded debt of the defendant City of High Point, retired during the fiscal year 1952-1953, was $308,000; and for any necessary purpose the defendant City of High Point may issue bonds not in excess of $308,000 during the next fiscal year, without a vote of the people of the City of High Point.

EXHIBIT B is an agreement duly approved by the Council of the City and the Board of Commissioners of the County. The material parts are as follows:

(1) The City and County shall erect upon the Guilford County Building Grounds in High Point a new building to be used by the City for the housing of its Police Department, Jail, and for holding City Municipal Court; and to be used by the County for the Sheriff's Department, Jail, and the holding of terms of the Superior Court, High Point Division; and to be used for other purposes of the City and County to be hereafter mutually agreed upon.

(2) The selection of an architect; plans and specifications; and cost of the proposed building shall be approved by the City Council of the City and County Commissioners of the County.

(3) The location of the site of the building shall be agreed upon by the City Council and the County Commissioners, and the value of the site appraised by the Appraisal Committee of the High Point Real Estate Board before construction of the building begins.

(4) The County shall convey to the City the site as determined and valued in paragraph 3.

(5) The entire expense of designing, erecting and completing said building shall be immediately borne by the City.

(6) A one-half undivided interest in the building and grounds, upon completion of said building, shall be conveyed to the County by the City.

(7) The purchase price of the County's one-half undivided interest in the new building and grounds shall be ascertained as follows: To the appraised value of the grounds shall be added the exact cost of the completed building, and this sum divided by two, which shall be deemed the value of each undivided interest. From this sum the value of the grounds shall be subtracted and the County shall owe to the City the sum remaining.

(8) The County shall pay the purchase price of its one-half undivided interest as follows: $50,000 on 1 August of the next fiscal year after the building is completed, and $50,000 on 1 August of each fiscal year thereafter until the entire debt is paid. The County can pay more than $50,000 in any fiscal year if it so desires. The payments so provided shall bear no interest if paid at maturity; past-due payments shall bear 4% interest per annum until paid.

(9) During the 25 years succeeding the completion of the building the County shall have the option to purchase the other one-half undivided interest of the City in the building at a value determined by the value of the grounds at time of conveyance to the City, and the cost of the completed building, that is to say, one-half of said value. In any event, on the expiration of 25 years the County shall purchase the other one-half interest of the City on the basis above provided for.

(10) So long as the building is jointly owned, it shall be jointly occupied by the City and the County as hereafter agreed upon; and for a period of ten years after the purchase of the interest of the City by the County the building shall be jointly occupied as at the time of purchase.

(11) No rent shall be paid if each shall occupy an equal amount of space; if one occupies more space than the other, rent shall be paid for the extra space. After the County becomes the sole owner, the City shall pay an equitable rent to the County.

After this agreement was duly approved by the Council of the City and by the Board of Commissioners of the County, it is admitted in the pleadings that the defendants secured the passage of H.B. 497 by the 1953 Session of the General Assembly of North Carolina purporting to author-

ize the proposed action on the part of the City and the County as set out in their agreement in the erection of said building for their joint use in the City.

EXHIBIT A is H.B. 497, Ch. 353 of the 1953 Session of the General Assembly of North Carolina and is entitled "An Act to Authorize Guilford County and the City of High Point to Erect a Governmental Building for Their Joint Use." It was ratified 18 March, 1953. The material parts are in substance these.

Section One authorizes and empowers the County Commissioners of the County and the Council of the City to erect on a portion of the lands now owned by the County in the City, corner of South Main and Green Streets, a building for the purposes and uses as set forth in the agreement which is EXHIBIT B.

Section Two. The County Commissioners of the County and the Council of the City are vested with the power to determine in their discretion all matters relating to the erection, use and disposition of the building, including such matters as whether the initial cost of the erection of the building shall be borne by one governmental unit; and which one; and whether such cost shall be borne by both governmental units and in what proportion; in whose name the title to said land or building shall vest either temporarily or permanently; the extent of the use of the building by each governmental unit; the rent, if any, to be paid by each governmental unit; and the final disposition of the property. The County and the City are empowered at any time to purchase the interest of the other on credit, and to pay the purchase price in installments at such times and upon such terms as may be mutually agreed upon. The express mention of the above matters shall not exclude the power of the County and the City to determine any other matter necessary, proper and relating to the erection, the use and the final disposition of said land and building.

Section Three. The erection of the building is necessary for the proper operation of the governmental functions of the County and the City, and will be beneficial to both; and the City, when authorized by its City Council, may issue bonds to provide for the erection of said building in accordance with the Municipal Finance Act of the State of North Carolina.

Section Four. The determination of any matter relating to the erection, the use and disposition of the building shall be at a joint meeting of the Board of County Commissioners and City Council; or the said determination may be in separate meetings, if both governing bodies shall elect to do so. Each governing body shall vote as a unit, and the majority of both bodies shall be necessary to make any agreement concerning the erection, the use and disposition of the building and the land upon which it shall be built.

Section Five. So long as the County and the City own the property jointly and for a period of ten years after either shall last acquire the entire interest, neither the County nor the City shall sell the property, or any interest therein, without the consent of the other.

Section Six. The powers granted by this Act are granted in addition to and not in substitution for existing powers of the County and City.

Section Seven. If any provision of this Act shall be held invalid, the remainder of the Act shall not be affected thereby.

It is admitted in the pleadings that the cost of this building will be approximately $300,000.

Sink, J., entered judgment stating that the cause was heard upon the pleadings and the statement of facts agreed to by the parties, found that the Public-Local Act of the 1953 General Assembly of North Carolina and the agreement between the City and the County are valid and constitutional, "and ordered that the action be dismissed, and that the defendants recover their costs."

From the judgment signed, the plaintiff appealed, assigning error.

*Schoch & Schoch, Haworth, Haworth & Walker, and W. B. Byerly, Jr., for plaintiff, appellant.*

*Horace Haworth, G. H. Jones, and T. C. Hoyle, Sr., for defendant, appellees.*

PARKER, J. The plaintiff as a taxpayer of the City has the right to bring this action to test the authority of the City to issue the proposed bonds. *Williamson v. High Point,* 213 N.C. 96, 195 S.E. 90; *Nash v. Tarboro,* 227 N.C. 283, 42 S.E. 2d 209.

This question is presented for our decision. Is the issuance of bonds by the City to pay the total cost of the erection of a building in the City for the joint use of the City and the County—the City to use said building for its Municipal Court, its Police Department and other governmental functions, and the County to use said building for holding terms of the Superior Court, High Point Division, and other governmental functions necessary or proper to be performed in the City—a necessary expense of the City within the meaning of Art. VII, sec. 7, of our Constitution, when the County shall be required eventually to purchase the building from the City, according to a contract between them? The answer is No.

Art. VII, sec. 7, of our Constitution reads: "No debt or loan except by a majority of voters.—No county, city, town, or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the

necessary expenses thereof, unless approved by a majority of those who shall vote thereon in any election held for such purpose."

The City proposes to issue bonds to pay for the total initial cost of the building as a necessary expense of the City without a vote of the people thereon. The exercise by a municipal corporation of the power to pledge its credit is an incipient step in the exercise of the power of taxation, and authority given to a municipality to issue bonds necessarily involves the power to levy taxes for the payment of interest on said bonds and the payment of said bonds at maturity. *Bennett v. Comrs.,* 173 N.C. 625, 92 S.E. 603; *Comrs. v. Lacy,* 174 N.C. 141, 93 S.E. 482; *Brown v. Comrs.,* 223 N.C. 744, 28 S.E. 2d 104.

Section 3 of H.B. 497, Ch. 353, Session Laws of the 1953 General Assembly states that the erection of the building provided for in the Act is necessary for the proper operation of the governmental functions of the County and the City, and will be beneficial to both. The legislative construction of the Constitution is entitled to great weight, but it is not binding upon the Court. Our decisions uniformly hold that what are necessary expenses for a municipal corporation for which it may contract a debt, pledge its faith, or loan its credit and levy a tax without an approving vote of a majority of those who shall vote thereon in an election held for such purpose, is a question for the Court. *Person v. Watts,* 184 N.C. 499, 115 S.E. 336; *Palmer v. Haywood County,* 212 N.C. 284, 193 S.E. 668; *Sing v. Charlotte,* 213 N.C. 60, 195 S.E. 271; *Purser v. Ledbetter,* 227 N.C. 1, 40 S.E. 2d 702; *Green v. Kitchin,* 229 N.C. 450, 50 S.E. 2d 545.

What is such "a necessary expense" has been tersely and lucidly stated for the Court by *Ervin, J.,* in *Green v. Kitchin, supra,* at p. 457. "This Court has uniformly held that where the purpose for which a proposed expense is to be incurred by a municipality is the maintenance of public peace or administration of justice, or partakes of a governmental nature, or purports to be an exercise by the municipality of a portion of the State's delegated sovereignty, the expense is a necessary expense within the Constitution, and may be incurred without a vote of the people. *Sing v. Charlotte,* 213 N.C. 60, 195 S.E. 271; *Palmer v. Haywood County,* 212 N.C. 284, 193 S.E. 668; 113 A.L.R. 1195; *Martin v. Raleigh,* 208 N.C. 369, 180 S.E. 786."

In *Henderson v. Wilmington,* 191 N.C. 269, 132 S.E. 25, the question for decision was whether the purchase of wharf and terminal facilities was a necessary expense of the City of Wilmington. At p. 278 the Court said: "The cases declaring certain expenses to have been 'necessary' refer to some phase of municipal government. This Court, so far as we are advised, has given no decision to the contrary." At p. 277 the Court further said: "In defining 'necessary expense' we derive practically no

aid from the cases decided in other States. We have examined a large number of such cases apparently related to the subject and in each one we have found some fact or feature or constitutional or statutory provision antagonistic to or at variance with the section under consideration. We must rely upon our own decisions."

While this Court has said in *Henderson v. Wilmington, supra,* in defining necessary expenses "we must rely on our own decisions," it may not be inappropriate to quote what is said in 51 Am. Jur., Taxation, Sec. 402: "It is clear that one taxing district, whether State, County, Municipality, or District established for the particular purpose, cannot be taxed for the benefit of another district. . . . A municipal corporation cannot be compelled to turn over a portion of its funds to the county in which it is situated in order to pay the expense of a county function."

Nor what is said in 61 C.J., Taxation, Sec. 66: "The purpose to be accomplished by a tax must pertain to the district taxed, as the constitutional requirement of uniformity in taxation forbids the imposition of a tax on one municipality or part of the State for the purpose of benefiting or raising money for another." In support of this statement C.J. quotes the following North Carolina cases: *Comrs. v. Lacy,* 174 N.C. 141, 93 S.E. 482; 2 A.L.R. 726; *Keith v. Lockhart,* 171 N.C. 451, 88 S.E. 640; *Faison v. Board of Comrs.,* 171 N.C. 411, 88 S.E. 761.

In *Campbell County v. City of Newport,* 174 Ky. 712, 193 S.W. 1, L.R.A. 1917D, 791, the decision is correctly summarized in the L.R.A. headnote: "The attempt by the legislature to require a municipal corporation to turn over a portion of its taxes to the county in which it is situated to assist in the support of a juvenile court, for which the county has already levied a tax on all the property within its limits, including that within the municipality, is invalid as violating the principle that taxation and representation must go together, that one municipal subdivision cannot levy a tax upon property located in another municipal subdivision, and also the constitutional provision that taxes must be uniform."

A municipality, a creature of the State, has the "powers prescribed by statute, and those necessarily implied by law, and no other." G.S. 160-1. Therefore, a municipality cannot expend tax revenue without the explicit or implicit authority of a constitutional statute. *Horner v. Chamber of Commerce,* 231 N.C. 440, 57 S.E. 2d 789.

The defendant appellees contend in their brief that the case of *Airport Authority v. Johnson,* 226 N.C. 1, 36 S.E. 2d 803, supports their position that the City can issue bonds to pay the total initial cost of this building, because the expenditure will be primarily for the benefit of the City. The facts are entirely different. In that case it was held that Guilford County and the Cities of Greensboro and High Point could lawfully join in the construction, maintenance and operation of an airport *if each of*

them is benefited. But it was stipulated in the agreed facts that the appropriations made by the municipalities were out of funds in their hands not derived from *ad valorem* taxes, but mainly from the sale of property. In this case at p. 8 this Court said: "No question of credit or taxation in violation of Article VII, section 7" (of our Constitution) "is involved, and the prohibition constituting the *ratio. decidendi* in *Sing v. Charlotte, supra,* does not apply."

The defendant appellees argue in their brief that *Callam v. City of Saginaw,* 50 Mich. 7, 14 N.W. 677, is in point in support of their position. The Michigan Legislature enacted a statute authorizing the City of Saginaw to take upon itself alone the entire expense of building a courthouse in the City for Saginaw County. A taxpayer filed his bill to restrain the issue of bonds to pay for said building. In that case the Michigan Court said: ". . . the Constitution, which in some cases requires a vote from the electors of the counties on financial questions, contains no such requirements as to cities, which usually act by their local legislatures . . . Under the statute, while the approval of the taxpayers is a condition precedent, it is nothing more. The council can do as they please about making an arrangement with the county. The legislature might have given the council power to act without the approval of any other persons." According to the language of the Court, the Michigan Constitution had no provision similar to Art. VII, sec. 7, of our Constitution.

The issuance of bonds by the City to pay for the erection of a building for the operation of its Municipal Court for the housing of its Police Department, providing space for its City Jail and for the performance of other governmental functions is undoubtedly "a necessary expense" of the City within the meaning of Art. VII, sec. 7, of our Constitution. But the City proposes to go further and issue its bonds, the interest and principal of which must be paid by *ad valorem* taxation of property within the City, to erect a building for the City and the County to use for their governmental functions respectively.

G.S. 153-77, subsec. (b), provides that counties may issue bonds and levy taxes for "the erection and purchase of courthouse and jails." That is "a necessary expense" for the County. *Jackson v. Comrs.,* 171 N.C. 379, 88 S.E. 521; *Castevens v. Stanly County,* 209 N.C. 75, 183 S.E. 3. For the City to issue bonds, thereby contracting a debt, pledging its faith and lending its credit, and as a necessary consequence being required to levy taxes, to pay the entire cost for the erection of a building, part of which shall be used by the County as a courthouse for the Superior Court of the County, High Point Division, for providing space for the Office of the Clerk of the Superior Court of the County, for the housing of the Sheriff's Department, the Tax Supervisor's Department of the County,

for the safekeeping of county prisoners and for other governmental functions of the County proper to be performed in the City touches no phase of municipal government. All those matters are governmental functions of the County, not of the City, and the taxpayers of the City with all the other taxpayers of the County are taxed for the performance by the County of such governmental functions of its own. To tax the citizens of High Point again to pay for the performance of governmental functions of the County would mean that taxation in the County would not be uniform. Taxation that is not uniform is necessarily unequal. It would mean taxing property in the City twice for the same purpose. Lack of uniformity in taxation is unjust, and opposed to the principles of equality and fairness upon which a righteous scheme of taxation depends. It is not "a necessary expense" for the City to provide such a building for the County.

It is with us well settled law that for other than necessary expenses a municipality cannot levy a tax either within or in excess of the constitutional limitations except by a vote of the people under appropriate legislative authority. *Sing v. Charlotte, supra,* and cases cited; *Airport Authority v. Johnson, supra.*

The defendant appellees state in their brief the "Constitution Art. V, sec. 4 authorizes a city to issue bonds for necessary expenses without a vote of the people, if the amount issued does not exceed two-thirds of the amount of bonds retired during the preceding fiscal year." As we have stated above, the proposed issue of bonds is not a necessary expense of the City.

It is an elementary principle of law that an Act of the General Assembly will not be held unconstitutional, unless it is clearly proven so. *Nash v. Tarboro, supra,* and the numerous cases therein cited. We are mindful of the fact that every presumption is in favor of the constitutionality of a statute, and all doubts must be resolved in support of it. However, when it is clear a statute transgresses the authority vested in the legislature by the Constitution, it is a duty of the Court to declare the act unconstitutional. *Glenn v. Board of Education,* 210 N.C. 525, 187 S.E. 781; *Board of Managers v. Wilmington,* 237 N.C. 179, 74 S.E. 2d 749.

The plaintiff contends that H.B. 497, Ch. 353, enacted at the 1953 Session of the General Assembly is unconstitutional. We have carefully studied the question before us in the light of the decisions and other authorities herein cited, and we are of the opinion that this part of Section 3 of the Act which reads "and the City of High Point when authorized by its city council may issue bonds to provide for the erection of said building in accordance with the Municipal Finance Act of the State of North Carolina" is in clear violation of Art. VII, sec. 7, of our Constitution, as it would permit the City not for the necessary expenses

thereof to contract a debt, pledge its faith, loan its credit and levy a tax, without the approval of a majority of the voters of the City in an election held for such purpose. And this is true, even though the County has entered into a contract with the City to pay the City eventually in full for said building.

The agreed facts do not present for our consideration a case where a city has funds already on hand, and the proposed expenditure for a public purpose will impose no further liability on the municipality, nor involve the imposition of further taxation upon it. *Adams v. Durham,* 189 N.C. 232, 126 S.E. 611; *Nash v. Monroe,* 198 N.C. 306, 151 S.E. 634; *Goswick v. Durham,* 211 N.C. 687, 191 S.E. 728; *Airport Authority v. Johnson, supra.*

Nor do the agreed facts present for decision a case where the Legislature has enacted a statute that the City may issue bonds for the construction of a building to be jointly used by the City and the County, provided it was approved by a majority of those who voted thereon in an election held for such purpose, and the action of the Legislature has been sanctioned by a majority vote of the people of the City, who would be primarily liable for the bonds, and necessarily affected by the tax. See *Briggs v. Raleigh,* 195 N.C. 223, 141 S.E. 597; and *Turner v. Reidsville,* 224 N.C. 42, 29 S.E. 2d 211, where the people of Reidsville voted to issue bonds and levy a tax for a municipal airport.

We have decided this case upon the agreed facts presented to us. To discuss other questions argued in the defendant appellees' brief would be to render an advisory opinion, which we do not do.

However beneficial it may be to have a joint building for the use of the City and the County in High Point in the performance of their respective governmental functions there, the cost of the building, if constructed, must be paid in accordance with the provisions of our Constitution and laws.

The judgment of the Court below is reversed, and it is ordered that a permanent injunction issue to restrain the City from issuing the proposed bonds.

Reversed.