HON. HUGH L. CAREY Chairman, New York State Emergency Financial Control Board for the City of New York
This is in reply to your letter dated March 31, 1977, requesting my opinion as to whether the City of New York may, in fixing its real estate tax rate outside the constitutional tax limit of 2-1/2% of the average full value of taxable real estate in the City, take into consideration the fact that a portion of those taxes will be uncollectible and fix the rate at a level which, considering such uncollectible taxes, will produce a tax income sufficient to meet budgeted expenses for debt service. In considering the questions posed in your request for my opinion, we have also ascertained that approximately 10% of New York City's tax levy remains uncollected each year.
Article VIII, § 10, of the State Constitution provides as pertinent here:
 "Hereafter, in any * * * city * * *, the amount to be raised by tax on real estate in any fiscal year, in addition to providing for the interest on and the principal of all indebtedness, shall not exceed an amount equal to the following percentages of the average full valuation of taxable real estate of such * * * city * * *;
 "(f) * * * the city of New York and the counties therein, for city and county purposes, a combined total of two and one-half per centum." (Emphasis added.)
Article VIII, § 10, further provides that the "amount to be raised by tax" for general purposes shall be "in addition to providing for" debt service, thus separating a municipality's power to tax for general purposes, subject to a tax limit, from the power to tax, outside the tax limit, for debt service (see also, Article VIII, § 2, fourth unnumbered paragraph, id., § 12, last sentence).
While the precise question of whether taxes levied for debt service and thereby excluded from a tax limit may include in the levy an amount for the portion of the taxes anticipated to remain uncollected has never been answered, there is, however, substantial authority both for the proposition that the authority to levy a tax for a purpose includes the power to add an amount for anticipated uncollected taxes (e.g., People v.Axelrod, 373 Ill. 446, 26 N.E.2d 512 [1939]; Dobyns v. Cheshire,9 Cal.App.2d 77, 48 P.2d 743 [Dist. Ct. Cal., 1935]; Burnett v. GrandRapids, 264 Mich. 593, 250 N.W. 32 [1933]; Norris v. Montezuma ValleyIrrigation District, 248 F. 369, 373 [8th Cir., 1918], cert. den.248 U.S. 569; McQuillin, Municipal Corp. [3d Ed.], § 44.99) and for the proposition that the power to levy a tax sufficient to pay a debt is implied from the grant to a municipality of the power to incur the debt (e.g., Scotland County Court v. Hill, 140 U.S. 41 [1891]; Quincy v.Jackson, 113 U.S. 332 [1885]; People v. Schlaeger, 391 Ill. 314,63 N.E.2d 382 [1945]; Wilson v. High Point, 238 N.C. 14, 76 S.E.2d 546
[1953]. From this it must be concluded that the power to incur a debt presupposes the power to provide sufficient actual funds to pay the debt and to levy a tax which, by virtue of anticipated tax delinquencies, will be adequate to pay the debt.
Article VIII, § 10 does not prescribe the procedure for determining whether amounts levied for debt service are properly so levied. Section54-a of the State Finance Law provides a statutory procedure for determining when a municipality has exceeded its tax limit. Thus, the constitutional provision is subject to statutory construction.
I am aware that in 1948, special legislation was adopted for the City of Rochester (L. 1948, ch. 451) which apparently authorized that city to include a reserve for uncollectible taxes in its tax rate for debt service and general purposes, and, in addition, required that any excess taxes collected be applied to future debt service or general purposes in proportion to their share of the reserve. In implementing section54-a of the State Finance Law, the State Comptroller has construed the Rochester statute as valid authority for the exclusion of this part of the levy from the tax limit (see, e.g., Op. St. Compt. 76-96, 76-96A). Section 1515 of the New York City Charter, as adopted by the voters of the City in 1975, effective January 1, 1977, provides:
 "§ 1515 Fixing of tax rate. — The council shall meet not later than the twenty-fifth day of June to fix the annual tax rate. The council shall deduct the total amount of receipts as estimated by the mayor from the amount of the budget, as fixed for the ensuing fiscal year, and shall cause to be raised by tax on real property such sum as shall be as nearly as possible but not less than, the balance so arrived at, by fixing a tax rate in cents and thousandths of a cent upon each dollar of assessed valuation. The tax rate shall be such to produce a balanced budget within generally accepted accounting principles for municipalities."
That Charter provision clearly requires a balanced budget and must be construed as authorizing the inclusion of a reserve for uncollected taxes in the debt service levy since that would be in accord with generally accepted accounting principles for municipalities and necessary to a balanced budget (see, e.g., Leon E. Hay and R.M. Mikesell, Governmental Accounting [5th ed.], p. 70; New York State Department of Audit and Control, Uniform System of Accounts for Cities [1976 ed.], p. 3; State of New York, Budget Manual for Cities, [1976 ed.], p. 10). Indeed, the State Comptroller's Accounting Directive issued pursuant to Public Authorities Law, § 3038(2) requires such a reserve. (Of course, the City should make every effort in succeeding years to collect taxes uncollected in prior years.) The New York City Charter has the same force and effect as a State statute (Schlakman v. Board of Education, 306 N.Y. 532, 538, affd.282 App. Div. 718, revd. on other grounds, 350 U.S. 551), enjoys the same strong presumption of constitutionality which attaches to all statutes, and is equivalent in both substance and effect to the special act relating to the City of Rochester. With respect to the tax levy for debt service, neither the Rochester statute nor the New York City Charter provision is in conflict with the Constitution but rather construes it.
It should also be noted that since money raised for debt service cannot legally be used for general purposes (Matthaei v. Housing Authority ofBaltimore City, 177 Md. 506, 9 A.2d 835 [Ct. of App. Md., 1939]), the requirement of the Rochester statute that any surplus be applied to future debt service is consistent with general principles of law. Those principles are likewise applicable here.
I, therefore, conclude that New York City may include a reserve for those taxes, which it estimates in each budget year in good faith will be uncollectible, in a tax levy for debt service and, by virture of the fact that such taxes are restricted to payment of debt service only, the entire amount of a tax levy for debt service would be excluded from the City's tax limit.