IN THE MATTER OF A FILING MADE BY THE NORTH CAROLINA FIRE INSURANCE RATING BUREAU IN REVIEW OF EXPERIENCE—FIRE INSURANCE 1950 TO 1954, INCLUSIVE.

(Filed 1 February, 1957.)

1. **Insurance § 3—**

Upon hearing of a petition of the Rating Bureau for review of fire insurance rates on a particular classification, the Commissioner of Insurance has no right to consider a rate which is not based on experience for a period of not less than five years next preceding the year in which the review is requested. G.S. 58-131.2.

2. **Same—**

Properties need not necessarily be included in the same class in order for them to have the same fire insurance rate, but separate classes may have the same rate provided the location, construction and degree of protection are substantially the same for both.

3. **Same—**

Upon hearing of a petition of the Rating Bureau for a change in rates upon a particular class of property, the burden is upon it to establish that the proposed rate is fair and reasonable. G.S. 58-131.

4. **Same—**

The fact that the Insurance Commissioner has approved classifications of property for rate making purposes does not relieve the Commissioner of

the duty to determine whether the Rating Bureau's application of an approved rating method or classification is unfairly discriminatory.

**5. Same—**

Application for an increase in insurance rates on unprotected farm dwellings, which would result in a higher rate from that applicable to unprotected non-farm dwellings, similar in location, construction and hazards, and having substantially the same degree of protection, is properly denied by the Insurance Commissioner, since G.S. 58-131 proscribes such discrimination.

**6. Same—**

Where requested increase in insurance rates is based on the loss ratio of a class as a whole, objection to a finding that the Rating Bureau failed to present the loss experience for the prior five years on a sub-classification included in the class, is immaterial.

**7. Same—**

An order of the Insurance Commissioner denying increase in rates upon one particular class in excess of the rates upon another class similar in location, construction and hazards, and having substantially the same degree of protection, is not tantamount to a holding that the classification upon which the increase was requested was so arbitrary and unreasonable as to be illegal and void.

JOHNSON, J., not sitting.

APPEAL by the petitioner, The North Carolina Fire Insurance Rating Bureau, from *Hobgood, J.,* June Civil Term 1956 of WAKE.

This is an appeal from a judgment of the Superior Court affirming an order of the Commissioner of Insurance wherein he refused to approve a requested increase of 25% in the fire insurance rate on farm property, including farm dwellings, proposed by The North Carolina Fire Insurance Rating Bureau, hereinafter called Rating Bureau, in its "Annual Review of Experience" report to the Commissioner of Insurance, hereinafter called Commissioner.

The Rating Bureau is an agency created pursuant to Article 13 of Chapter 58 of the North Carolina General Statutes. All companies writing fire insurance in North Carolina are required by statute to be members of the Rating Bureau. It is charged with the responsibility of making and filing rates, rating plans, classifications, schedules, rules and standards for fire insurance, subject to the approval of the Commissioner.

This cause originated before the Commissioner upon a filing made by the Rating Bureau on 21 November 1955. The filing sought a review of fire insurance experience and requested an increase in certain fire insurance rates, including specifically a request for a 25% increase in the rates on farm property, known as Class 021.

After due advertising, as required by law, a public hearing was held on the matter by the Commissioner on 11 January 1956. The North Carolina Farm Bureau Federation and the North Carolina Farm Bureau Mutual Insurance Company appeared at said hearing, both being represented by counsel, and objected to the increase in rates on farm property.

The evidence before the Commissioner at the above hearing revealed that the Rating Bureau, in arriving at the amount of the requested increase, took the total earned premiums produced by fire insurance policies on the many types of property insured and adjusted the premiums written during the five-year period of 1950-1954 inclusive to the current rates. These premiums, as adjusted, amounted to $131,254,250 for the five-year period. The fire losses covered by the policies which produced the above premiums and for the same period amounted to $68,871,975, producing a loss ratio of 52.47%.

It was determined that an adjustment to the customary 50% loss ratio would require an increase in premiums of 4.94%, or, based on premiums written and in effect in 1954, an increase of $1,489,027.

The total net adjustments made by the Rating Bureau and submitted for approval call for an increase in fire insurance rates of $1,469,986 annually. The Rating Bureau requested the Commissioner to raise the North Carolina Farm Property Schedule by increasing the rates 25% on farm property. Farm property is included in Class 021 and consists of dwellings, tobacco barns, livestock, growing crops and hay and grain in stacks, buildings and contents. For the five-year period ending with the calendar year 1954, the written premiums were $16,180,343. During that period losses were $10,395,192, giving a loss ratio of 64.25%. The 25% increase requested is based on the premiums written and rates in effect in 1954 applicable to Class 021 and which premiums amounted to $3,602,249 for the year 1954. Translated into dollars, the proposed increase would raise farm property fire insurance rates annually in the amount of $900,562, the major portion of which would fall on farm dwellings within Class 021. Increases were requested for five other groups ranging from 7% to 13½%, which increases would amount to approximately $569,424 annually.

The evidence offered by the Rating Bureau is to the effect that Class 009 includes household contents only; Class 019 includes dwellings and contents; and Class 029, dwellings. And all of these classifications contain dwellings or contents which might be physically similar to farm dwellings and contents of farm dwellings.

The loss ratio on Class 009 for the five-year period was 63.41%, and for the year 1954, 79.94%. Class 019, includes unprotected farm dwellings or contents and unprotected non-farm dwellings or contents. This class had a loss ratio for the five-year period of 53.25% and for

the year 1954 of 62.87%. Class 029 includes unprotected non-farm dwellings. The five-year loss ratio in this class was 40.98%, and for the year 1954, 46.23%. Combining these three classes and using the same formula applied to the basic over-all figure, the loss ratio was 48.65% for the five-year period.

The Rating Bureau offered witnesses who testified that the isolation of farm property, faulty electric wiring and over-loaded circuits, and the many absences of the family from farm dwellings during the crop season, make farm dwellings a more hazardous risk than unprotected non-farm dwellings.

On the other hand, testimony offered by the North Carolina Farm Bureau Mutual Insurance Company, the North Carolina Farm Bureau Federation, and W. M. Williams, who operates an insurance agency which represents only stock companies and which agency obtains about 98% of its business in the rural areas of five counties in North Carolina, was to the effect that the present rates in North Carolina are adequate; that farm bureau companies in Virginia, Tennessee and Kentucky write fire insurance on farm dwellings and unprotected non-farm dwellings in suburban areas at essentially the same rate. That in Virginia the rate on county property, including farm dwellings, is 45c. That very few fires occur in farm dwellings in May, when the farm families are away from home planting their crops, or in July and August, when they are harvesting the crops; that most fires occur in the wintertime, when extra heat is needed. That in many counties in North Carolina a meter cannot be connected to a building until it is inspected and found to be wired properly; that more and more farm families are using gas and electricity for cooking, and stoves with automatic controls are being used in greater numbers for heating.

On 20 January 1956, the Commissioner rendered a decision and denied all the requests of the Rating Bureau for an increase in rates. On 17 February 1956, the Rating Bureau filed with the Commissioner a request for a rehearing and review. Pursuant to such request, a rehearing was set for 28 February 1956, all of the parties appearing at the original hearing having waived notice and having agreed that the matter might be heard at such time. On 19 March 1956, the Commissioner rendered his decision and again disapproved the request for increased fire insurance rates on farm property. However, the Commissioner did approve the increases requested for five other groups, which increases ranged from 7% to 13½% and which are calculated to produce approximately $569,424 annually in additional premiums.

In apt time the Rating Bureau appealed the decisions of the Commissioner, dated 20 January 1956 and 19 March 1956, in so far as the same denied a rate increase on farm property, to the Superior Court of Wake County by filing a petition for review pursuant to G.S. 58-9.3.

The matter came on for hearing in the Superior Court of Wake County before his Honor, Hamilton H. Hobgood, at the June Civil Term, upon the record made before the Commissioner. His Honor entered a judgment affirming the decisions of the Commissioner, and the Rating Bureau appealed to the Supreme Court, assigning errors.

*Attorney-General Patton and Assistant Attorney-General Bruton for the North Carolina Commissioner of Insurance.*

*Joyner & Howison for The North Carolina Fire Insurance Rating Bureau.*

*Broughton & Broughton for North Carolina Farm Bureau Federation and North Carolina Farm Bureau Mutual Insurance Company.*

DENNY, J. It appears from the evidence in this proceeding that the Rating Bureau proposed a rate increase for farm dwellings of approximately 16% on 28 October 1954. A public hearing was held on the proposal on 17 December 1954. The Commissioner found as a fact that the evidence presented did not support the Rating Bureau's contention that the hazards are different between unprotected farm and unprotected non-farm dwellings when the farm and non-farm dwellings are similar in location, are of the same construction and subject to the same degree of fire protection.

At the above hearing, it appears the Rating Bureau furnished experience on farm dwellings for the year 1953 only. Naturally, the Commissioner had no right to consider a rate for fire insurance except one based on the experience for a period of not less than five years next preceding the year in which the review was made and the other factors enumerated in the statute. G.S. 58-131.2. The Commissioner further held, "In view of General Statutes 58-131 it is not necessary to keep statistics separating farm dwellings from non-farm dwellings unprotected because this law provides there shall be no unfair discrimination 'between risks involving essentially the same construction and hazards, and having substantially the same degree of protection.' These two classes come within that category and should, under North Carolina law, be treated as one." While the statistical data offered at that time did not meet the requirement of G.S. 58-131.2, in that it covered only one year instead of five, the ruling to the effect that it was improper to include unprotected farm dwellings and unprotected non-farm dwellings in different classes for rate making purposes but that they should be treated as one class, to that extent the ruling modified the classes involved and approved in 1947 for rate making purposes. The ruling was tantamount to a finding pursuant to G.S. 58-131.2 that the Rating Bureau's application of an approved classification "is unwarranted,

unreasonable, improper or unfairly discriminatory," and in accord with the provisions of the statute, the Commissioner left the matter open so that the Rating Bureau might have an opportunity to propose adjustments in conformance with the decision. It would seem that the Rating Bureau chose to ignore the order, took no appeal from it, and later filed the request involved in this procedure, based on the original classifications as approved in 1947.

In the hearing before the Commissioner on the present request for an increase in fire insurance rates on farm property, the Rating Bureau furnished the experience on farm dwellings sub-Class 024 for the years 1953 and 1954 which showed a loss ratio in 1953 of 93.37% and for 1954 of 96.25%. Since this was for a period of less than five years, as required under G.S. 58-131.2, the Rating Bureau based its request on the loss ratio for Class 021, which includes sub-Classes as follows: 024, Farm Dwellings; 025, Farm Property, Livestock, Growing Crops and Hay and Grain in Stacks (not including Tobacco Barns); 026, Tobacco Curing Barns; 029, Tobacco Pack Barns; 028, Tobacco-Harvested Crop-Farm Floater Form.

As we interpret the record before us, if the requested increase should be allowed, most of it would fall on farm dwellings, sub-Class 024. Moreover, under the present methods of classification, it is conceded in appellant's brief, if two dwellings are located in the same neighborhood and are of similar construction, if one of the houses is located on a tract of land devoted to farming, which consists of as much as 3.1 acres, it is classified as a farm dwelling; but if the other house is located on a tract of land which consists of less than 3.1 acres, it is classified as a non-farm dwelling, whether the occupant is a farmer or not.

For the purposes of classification and keeping of statistics, there are now 115 different classes of property in this State. Statistics are kept as to the premiums and losses with respect to each of the 115 different specific classes. These classes were first approved by the Insurance Department of North Carolina on 1 January 1947. Prior to that time, classification statistics had been kept in only 26 classes. When the 26 classes were expanded to 115, it was merely a refinement of the 26 classes. The 115 classes, with minor modifications which have been approved from time to time, are still in effect.

For a more complete understanding of the powers and duties of the Commissioner with respect to the reduction or increase of rates, we deem it necessary to consider the pertinent provisions of G.S. 58-131.2, which read as follows: "The Commissioner is hereby empowered to investigate at any time the necessity for a reduction or increase in rates. If upon such investigation it appears that the rates charged are producing a profit in excess of what is fair and reasonable, he shall

order such reduction of rates as will produce a fair and reasonable profit only.

"If upon such investigation it appears that the rates charged are inadequate and are not producing a profit which is fair and reasonable, he shall order such increase of rates as will produce a fair and reasonable profit.

"In determining the necessity for an adjustment of rates, the Commissioner shall give consideration to all reasonable and related factors, to the conflagration and catastrophe hazard, both within and without the State, to the past and prospective loss experience, including the loss trend at the time the investigation is being made, and in the case of fire insurance rates, to the experience of the fire insurance business during a period of not less than five years next preceding the year in which the review is made.

"Whenever the Commissioner finds, after notice and hearing, that the bureau's application of an approved rating method, schedule, classification, underwriting rule, bylaw or regulation is unwarranted, unreasonable, improper or unfairly discriminatory he shall order the bureau to revise or alter the application of such rating method, schedule, classification, underwriting rule, bylaw or regulation in the manner and to the extent set out in the order."

The manager of the Rating Bureau in testifying in its behalf for the requested increase of rates on farm property, said: "As between an unprotected farm dwelling and an unprotected dwelling of Class 10 (an unprotected non-farm dwelling), it could be possible to have precisely similar types of buildings. Farm dwellings are placed in the classification with farm property rather than in the classification of other unprotected dwellings because farm dwellings are really considered to be a part of the farming process, more than in the case of any other class of dwelling occupancy. It is my understanding that the separate classification of farm dwellings is not on the basis of construction but on the basis of hazard."

It is apparent, we think, under the provisions of G.S. 58-131.2, that the General Assembly has never authorized a fire insurance rate to be fixed upon a consideration of hazard alone. Furthermore, 58-131 provides: "The Rating Bureau in making rates shall not unfairly discriminate between risks involving essentially the same construction and hazards, and having substantially the same degree of protection."

We do not understand that property must necessarily be included in the same class in order for it to have the same fire insurance rate, provided the location, construction and degree of protection are substantially the same in both classes.

The question as to whether a 50% loss ratio is a proper division of the premium dollar is not before us for decision. *Aetna Insurance Co.*

*v. Hyde,* 275 U.S. 440, 72 L. Ed. 357. However, it would seem that the selection of risks may figure substantially in the loss ratio, particularly on unprotected property. Unfortunately, the lack of proper installation and inspection of electric wiring in many instances is a source of substantial fire loss. It is unfortunate indeed that the county commissioners of many of our counties have not seen fit to exercise the authority given them by G.S. 160-122 to appoint qualified electrical inspectors, whose duties, among other things, would be to enforce all State and local laws governing electrical installations and materials, and to make inspection of all new electrical installations in the rural areas, as well as in towns having a population of less than 1,000, unless satisfactory provision for such inspection has been otherwise provided.

The appellant assigns as error the conclusion of law set forth in the judgment entered below to the effect that the following finding of fact is supported by substantial evidence in the record and is correct and proper: "That the North Carolina Fire Insurance Rating Bureau had the burden of proof to justify that there should be a differential in rates on unprotected farm dwellings from the unprotected non-farm dwellings known as Class 10. There was no evidence offered by the Rating Bureau that such differential was justified, and, therefore, in view of the provision of General Statutes 58-131, which reads as follows: 'The Rating Bureau in making rates shall not unfairly discriminate between risks involving essentially the same constructions and hazards, and having substantially the same degree of protection,' the proposed filing must be rejected."

It is provided in G.S. 58-9.3 (2), ". . . The order or decision of the Commissioner if supported by substantial evidence shall be presumed to be correct and proper." But we know of no statute or decision that makes a request of the Rating Bureau for an increase or decrease in rates presumptively correct and proper. The Rating Bureau is the movant in this proceeding and the burden is upon it to establish that the proposed rate is fair and reasonable, G.S. 58-131.2, and that it does not "unfairly discriminate between risks involving essentially the same construction and hazards, and having substantially the same degree of protection." G.S. 58-131. Furthermore, we hold that the mere fact that the Commissioner has heretofore approved 115 different classes of property in this State in order that premiums and losses with respect to each class may be ascertained, does not relieve the Rating Bureau of the burden of proof to support its request or requests to the Commissioner for reductions or increases in rates. Neither does the fact that certain classes have been approved relieve the Commissioner of the duty to determine whether the Rating Bureau's application of an approved rating method or classification is unfairly discriminatory. We think G.S. 58-131 was enacted to prevent such discrimination as

would exist between unprotected farm and unprotected non-farm properties, similar in location, construction and hazards, and having substantially the same degree of protection, if the request of the Rating Bureau, involved in this appeal, should be allowed. This assignment of error is overruled.

The appellant also assigns as error the conclusion of law to the effect that the following finding of fact is supported by substantial evidence in the record and is correct and proper: "That the North Carolina Fire Insurance Rating Bureau did not conform to the General Statutes 58-131.2, which requires that fire experience on any class be kept for five years and that the Rating Bureau did not present such experience on unprotected farm property, sub-Class 024."

In view of the fact that the requested increase was based on the loss ratio of Class 021 as a whole, which includes sub-Class 024, in our opinion this latter finding was not essential to the decision reached in the lower court. Hence, we deem it unnecessary to consider or discuss this assignment of error.

The appellant takes the position that there can be no doubt about certain conclusions, to wit: "(1) The classifications 021, 009, 019, and 029, were adopted by the Bureau pursuant to statutory requirement that classifications be provided. G.S. 58-130. (2) Those classifications were approved by the Commissioner. (3) Those classifications were in effect throughout the base period, 1950-1954, inclusive. (4) The Bureau was required by the N. C. Statute to report its statistics in accordance with the existing classifications and it did so report its statistics in this case in accordance with the classifications 021, 009, 019, and 029. (5) Those statistics justify and support the 25% rate increase sought by the Bureau for Class 021. (6) Those statistics do not justify any rate increase for the unprotected non-farm dwellings and contents, classes 009, 019, and 029."

The appellant's brief contains this further statement: ". . . The only remaining question is whether classification 021, farm property, was so arbitrary and so unreasonable as to be illegal and void from the beginning. That is the nub of this case."

In our opinion, the failure to grant the increase requested is not tantamount to a holding that the classification 021 was so arbitrary and so unreasonable as to be illegal and void from the beginning.

It will be noted that the appellant insists that the statistics do not justify any rate increase in Classes 009, 019, and 029. But the evidence of the Rating Bureau reveals that Class 009 had a loss ratio for the five-year experience period of 63.41%; Class 019 for the same period had a loss ratio of 53.26%; and Class 029 a loss ratio of 40.98%. If these three classes may be consolidated for rate making purposes, as the appellant insists they may, then we can see no reason why prop-

erties classed in 021 and 029, which are substantially alike in location, construction, hazards and protection, should not also be consolidated for rate making purposes.

In light of the provisions of G.S. 58-131, G.S. 58-131.2, and the evidence disclosed on the record, the rulings of the Commissioner in denying the 25% increase in fire insurance rates on farm property, Class 021, which rulings were upheld in the court below, in our opinion, were proper and must be upheld.

Affirmed.

JOHNSON, J., not sitting.