GREAT AMERICAN INSURANCE COMPANY v. WILLIAM A. JOHNSON, COMMISSIONER OF REVENUE, AND CHARLES F. GOLD, COMMISSIONER OF INSURANCE, DEFENDANTS.

AND

EMPLOYERS MUTUAL FIRE INSURANCE COMPANY v. W. A. JOHNSON, COMMISSIONER OF REVENUE, AND CHARLES F. GOLD, COMMISSIONER OF INSURANCE, DEFENDANTS.

(Filed 15 June 1962.)

**1. Municipal Corporations § 5—**

The organization and operation of a municipal fire department is authorized by G.S. 160-235 and is a governmental and not a private or proprietary function of a municipal corporation.

**2. Constitutional Law § 19—**

A pension paid a governmental employee for long and efficient service is a deferred payment of a portion of the compensation earned by such employee, and therefore is an emolument for services rendered not coming within the proscription of Article I, § 7 of the State Constitution.

**3. Taxation § 7—**

Allocation of a part of the general tax revenue of the State to aid municipal corporations in paying pensions to retired firemen is for a public purpose, since the State may assist a municipality as an agency of the State in the discharge of a governmental function. Article V, § 3, Constitution of North Carolina.

**4. Taxation § 2—**

A tax on insurance companies, levied on all fire and lightning contracts except such contracts written on property in unprotected areas, *is held* not unconstitutional as discriminatory, since the General Assembly has the power to make reasonable classifications of those subject to a privilege tax.

**5. Statutes § 3—**

The exclusion of contracts of fire insurance written on property in "unprotected areas" from the general tax levied on fire insurance contracts does not render the statute void for indefiniteness, since the phrase "unprotected areas" has a definite and well understood meaning when related to fire insurance coverage.

**6. Statutes § 4—**

Whether separate statutes must be treated as a single act in determining whether the enactments attempt to accomplish a prohibitive objective or attempt to accomplish a permitted objective by a prohibitive route, the court must look to the legislative history and background and all legislative pronouncements bearing upon the question, particularly any provisions in the separate acts disclosing that they are interrelated.

**7. Same—**

Chapter 1211, imposing a tax on certain insurance companies, Chapter 1212, creating a firemen's pension fund, and Chapter 1273, appropriating moneys from the general fund to the North Carolina Firemen's Pension Fund, must be construed as but a single statute in view of the legislative history and the provisions of the acts themselves disclosing their interrelation. Chapter 1212 expressly provides that in the event no valid tax should be imposed by Chapter 1211 or if no appropriation be made for said fund by Chapter 1273, the fund established by Chapter 1212 should be dissolved.

**8. Taxation § 8—**

A tax imposed on fire insurance contracts for the purpose of providing funds for the payment of pensions to retired firemen is unconstitutional under Art. I, § 17 of the State Constitution, since it imposes a tax on a particular group of tax payers for the special benefit of a particular group of public employees.

APPEAL by plaintiffs from *Mallard, J.,* February 1962 Regular Civil Term of WAKE.

These appeals present for determination the constitutionality of statutes enacted in 1959 establishing a firemen's pension fund and a source necessary for the support and maintenance thereof by a tax on fire and lightning insurance premiums.

Insurers first sought to have the validity of the act determined by a declaratory judgment. *Insurance Co. v. Gold, Comr. of Insurance,* 254 N.C. 168, 118 S.E. 2d 792. Failing in that effort, they paid the

taxes assessed under protest, and when their demand for refund was refused, they brought these actions to recover the taxes so paid.

Since the cases presented identical legal questions, they were consolidated for trial. Judge Mallard, at the conclusion of the evidence, sustained motions to nonsuit. Plaintiffs appealed from the judgments dismissing the actions.

*Joyner & Howison by W. T. Joyner, Jr. and Allen, Hipp & Steed by Arch T. Allen for plaintiff appellants.*

*Attorney General Bruton and Assistant Attorney General Pullen for defendant appellees.*

RODMAN, J. The 1957 Legislature, by c. 1420 of the laws of that Session, imposed a tax on purchasers of fire and lightning insurance to provide funds which, with contributions made by firemen, would suffice to create and maintain a fund from which qualified retired firemen would be paid a monthly sum, dependent in amount upon age and service. That act was, in January 1959, held unconstitutional. *Assurance Co. v. Gold, Comr. of Insurance,* 249 N.C. 461, 106 S.E. 2d 875.

Plaintiffs who attacked the 1957 statute based their claim of invalidity in part on grounds on which plaintiffs here challenge the 1959 statutes. Since the 1957 statute was manifestly void for the reason given in the opinion, it was not then thought necessary to discuss and pass on the other reasons advanced to invalidate that act.

The 1959 Legislature convened a week after the opinion was filed in *Assurance Co. v. Gold, Comr. of Insurance, supra.* Advocates of the proposal to pension firemen introduced in the House three bills numbered and captioned as follows: H. B. 689, "AN ACT TO AMEND G.S. 105-228.5 RELATING TO TAXES UPON INSURANCE COMPANIES"; H.B. 690, "AN ACT CREATING A FIREMEN'S PENSION FUND"; and H.B. 785, "AN ACT TO APPROPRIATE FUNDS FROM THE GENERAL FUND TO THE NORTH CAROLINA FIREMEN'S PENSION FUND." Bills 689 and 690 were ratified 19 June; bill 785, the appropriations act, was ratified 20 June. They became c. 1211, 1212, and 1273, S.L. 1959.

Plaintiffs assert these statutes, although separately enacted, must be treated as a single act enabling retired firemen to receive pensions derived, so far as taxes are considered, solely from moneys which plaintiffs and like corporations must contribute. This is the crucial question for discussion. Before reaching this question, it is proper to dispose of other questions urged to invalidate the several statutes.

C. 1212, S.L. 1959, added art. 3 to c. 118 of the General Statutes. Sec. 1 of the act declares its purpose to reduce fire losses by more

efficient local fire departments, and, to accomplish that purpose, sets up a fund from which retired firemen may receive pensions. This fund is composed in part of payments made by firemen who wish to take advantage of the statute and in part by appropriations by the State. To be eligible for pensions, firemen must meet specified conditions relating to training, length and continuity of service.

Sec. 2 of the act reads: "It is the purpose and intent of this Act that the State's contribution to the pension fund created hereby be derived solely from the proceeds of a one per cent (1%) tax imposed by the 1959 General Assembly upon amounts collected on contracts of insurance applicable to fire and lightning. In the event that such tax should not be imposed or that no appropriation be made for said fund, or in the event that such tax should be declared unconstitutional or invalid, then the fund herein established shall be dissolved."

Plaintiffs contend the maintenance of fire departments is a purely local obligation. Hence the Legislature may not authorize the use of State funds derived from State taxes to pension local firemen, some of whom are volunteers receiving no compensation for their services, some of whom are compensated from sources other than municipal taxes, and some of whom are compensated as regularly paid employees of the municipality. To use State taxes for such purpose would, they say violate the provisions of Art. V, sec. 3, of our Constitution prohibiting the levy of taxes for other than public purposes.

To support their contention that an appropriation by the State to a fund for the retirement of firemen is not a public purpose, plaintiffs cite and rely on *Commonwealth v. National Fire Ins. Co. of Hartford,* 172 S.E. 448; *Aetna Fire Ins. Co. v. Jones,* 59 S.E. 148; *Henderson v. London & L. Ins. Co.,* 34 N.E. 565; *Trustees of Exempt Firemen's Fund v. Roome,* 45 Am. Rep. 217. Because of differing constitutional and statutory provisions, we think the cited cases are not here controlling on the question of public purpose.

Municipal corporations are specifically authorized to organize and maintain fire departments and to fix the compensation of the persons so employed. G.S. 160-235. The organization and operation of a fire department is a governmental, not a private or proprietary function. *Mabe v. Winston-Salem,* 190 N.C. 486, 130 S.E. 169; *Howland v. Asheville,* 174 N.C. 749, 94 S.E. 524.

A pension paid a governmental employee for long and efficient service is not an emolument which, by Art. I, sec. 7, of our Constitution, cannot be paid. To the contrary it is a deferred portion of the compensation earned for services rendered. *Bridges v. Charlotte,* 221 N.C. 472, 20 S.E. 2d 825; *Bryant v. Woodlief,* 252 N.C. 488, 114 S.E. 2d 241; *Hinton v. Lacy,* 193 N.C. 496, 137 S.E. 669; *Brumley v.*

*Baxter,* 225 N.C. 691, 36 S.E. 2d 281; *Bowler v. Nagel,* 37 A.L.R. 1154; 70 C.J.S. 423; 40 Am. Jur. 961.

In fact plaintiffs concede the local community might use local tax funds to pension local employees.

"A municipal corporation, city or town, is an agency created by the State to assist in the civil government of a designated territory and the people embraced within these limits." *Smith v. Winston-Salem,* 247 N.C. 349; 100 S.E. 2d 835; *Green v. Kitchin,* 229 N.C. 450, 50 S.E. 2d 545; *Mabe v. Winston-Salem, supra.*

No good reason has been advanced which would prohibit the State from aiding its local agent in performing its governmental function by the allocation of part of general tax revenues. Unchallenged historical practice gives approval to such use of State funds. Statutes illustrative of the policy of providing assistance to local governments from State funds are: G.S. 105-213, directing distribution of the intangible taxes collected by the State; G.S. 136-41.2, 41.3, directing distribution of a part of the gasoline tax to cities for the maintenance of their streets not part of the State Highway system; G.S. 143-236.1, aiding in the construction of armories, *Morgan v. Spindale,* 254 N.C. 304, 118 S.E. 2d 913; G.S. 131-120, assisting in the construction of local hospitals. The State contributes to the salaries paid county farm agents and others locally employed.

The 1959 legislation, unlike the 1957 statute, does not penalize the purchaser of insurance because he chooses to buy from one insurance company rather than another. Here the tax is imposed on the insurance companies. It is merely a part of their cost of doing business. Of course the premium charged must suffice to take care of necessary expenses and provide a fair profit. But the Legislature levying privilege taxes for a permissible purpose may make reasonable classifications of those subject to the tax. *Finance Co. v. Currie,* 254 N.C. 129, 118 S.E. 2d 543, app. dis., 368 U.S. 289, 7 L. ed. 2d 336; *Bottling Co. v. Shaw, Comr. of Revenue,* 232 N.C. 307, 59 S.E. 2d 819.

C. 1211 (H.B. 689) amended G.S. 105-228.5 by inserting as the sixth paragraph from the last the following provision: "The amounts collected on contracts of insurance applicable to fire and lightning coverage, (marine and automobile policies not being included), a tax at the rate of one per cent (1%). This tax shall be in addition to all other taxes imposed by G.S. 105-228.5; provided, that this tax shall not be levied on contracts of insurance written on property in unprotected areas." Appellants insist that this statute is void because the proviso makes the statute so indefinite as to be unenforceable. True, there is no definition of the words "unprotected areas." Nonetheless we think the phrase has a well-understood meaning when dealing with property

protected by fire insurance. *In re Rating Bureau,* 245 N.C. 444, 96 S.E. 2d 344.

The statute does not purport to be based on benefits accruing to the insurance companies required to pay the tax. It is not, therefore, open to the objection that some who benefit from an efficient fire department are required to bear the burden without participation by others receiving equal benefits.

The reasons so far considered are not sufficient to invalidate the statutes. We are thus brought to the question on which plaintiffs place principal reliance. That question may be stated thus: May the Legislature by statute impose a tax on one group for the sole purpose of paying the salaries of a particular class or group of public employees?

The question as stated assumes that the three acts here challenged are in fact a single piece of legislation although divided into three separate bills for enactment by the Legislature. The soundness of that assertion must be determined before the question raised can be answered.

When an act is challenged because the object to be accomplished is prohibited or a prohibited route is selected to reach a permissive destination, it is proper to look at legislative background to ascertain legislative intent. *Cab Co. v. Charlotte,* 234 N.C. 572, 68 S.E. 2d 433; *Nance v. R.R.,* 149 N.C. 366; 50 Am. Jur. 274-275.

The movement by organized firemen to secure enactment of a state-wide law providing greater benefits than the firemen's relief fund (arts. 1 and 2, c. 118, General Statutes) culminated with the enactment of c. 1420, S.L. 1957. As previously noted, that act was held void because of the discriminatory provision in the tax section.

We are now confronted with the question: Did the 1959 Legislature, when it enacted c. 1211, 1212, and 1273, intend to accomplish the same objective as in 1957, and, if so, has it again chosen a prohibited route?

Courts, when called upon to determine the meaning or validity of a particular statute, should consider all the Legislature has said that has a bearing on the question at issue. *Coach Lines v. Brotherhood,* 254 N.C. 60, 118 S.E. 2d 37; *Blowing Rock v. Gregorie,* 243 N.C. 364, 90 S.E. 2d 898; *S. v. Dixon,* 215 N.C. 161, 1 S.E. 2d 521; *In re Blalock,* 233 N.C. 493, 64 S.E. 2d 848; *Keith v. Lockhart,* 171 N.C. 451, 88 S.E. 640; *Alton R. Co. v. Railroad Retirement Board,* 16 F. Supp. 955.

When the three 1959 statutes are examined it is, we think, impossible to escape the conclusion that all are parts of a composite picture, and the tax statute, c. 1211, would not have been enacted if the pension fund statute, c. 1212, had failed of passage. Sec. 2 of c. 1212 makes it clear that statute would not have passed if H.B. 689 (c. 1211), levying

the tax, had failed to pass. The appropriation act, c. 1273, is by express language conditional, and the appropriation is limited to revenues to be produced by c. 1211.

So we have a tax imposed exclusively on a particular group of insurance companies for the special benefit of a particular group of public employees. The tax is imposed without any suggestion of any benefit peculiar to the group taxed. As said by *Mr. Justice Roberts* in *United States v. Butler,* 297 U.S. 1, 80 L. ed. 477, 56 S. Ct. 312, 102 A.L.R. 914: "The word (tax) has never been thought to connote the expropriation of money from one group for the benefit of another." *Walker, J.,* phrased the rule this way: "(T)he few ought not to be taxed for the sole benefit of the many, or the whole, nor should the latter be taxed for the sole benefit of the former." *Faison v. Commissioners,* 171 N.C. 411, 88 S.E. 761; *Keith v. Lockhart, supra.* Both of these cases are cited with approval by *Parker, J.,* in *Wilson v. High Point,* 238 N.C. 14, 76 S.E. 2d 546.

*Hoke, J.,* said, in *Commissioners v. State Treasurer,* 174 N.C. 141, 93 S.E. 482: "It is a fundamental principle in the law of taxation that taxes may only be levied for public purposes and for the benefit of the public on whom they are imposed, and to lay these burdens upon one district for benefits appertaining solely to another is in clear violation of established principles of right and contrary to the express provision of our Constitution, Art. I, sec. 17, which forbids that any person shall be disseized of his freehold liberties and privileges or in any manner deprived of his life, liberty or property but by the law of the land."

As indicated earlier in this opinion, the Legislature may use tax moneys to pay pensions to those who have served in the Armed Forces; but presumably no one would contend the Legislature could levy a tax on all male citizens between the ages of 18 and 45 who had not served in the Armed Forces to provide funds to pension those who had so served. That is exactly what the legislation here challenged does to a limited group of insurance companies. To hold otherwise would be to utterly ignore the provisions of sec. 2, c. 1212, and sec. 1 1/2, c. 1273, S.L. 1959. Therein lies the distinction between this case and *Knights v. Jackson,* 260 U.S. 12, 67 L. ed. 102.

The legislation enacted in 1961 relating to taxes on insurance companies and pensions for firemen is not relevant to the present controversy. Plaintiffs' rights are to recover the taxes levied and paid under the 1959 statutes, c. 1211, 1212, 1273, S.L. 1959.

Reversed.