IN RE: APPEAL OF AND PETITION FOR JUDICIAL REVIEW BY ARCADIA
DAIRY FARMS, INC. OF REGULATION 4 NCAC 7.0505, RULES OF
CLASSIFICATION OF THE NORTH CAROLINA MILK COMMISSION AS
AMENDED, NOVEMBER 10, 1977

No. 7910SC27

(Filed 6 November 1979)

**Agriculture § 16— distribution of "reconstituted" milk—equalization payments for
producers—unconstitutionality of statute and administrative rule**

   The statute authorizing the Milk Commission to "provide for an equaliza-
tion payment in order that producer milk will not be paid for in a lower class
through the combining of water and milk constituents," G.S. 106-266.8(3), and
an administrative rule under which a distributor of milk "reconstituted" from
Wisconsin milk powder was assessed an equalization payment for the benefit
of North Carolina milk producers, violate the Commerce Clause of the U.S.
Constitution and the "law of the land" clause of Art. I, § 19 of the N.C. Con-
stitution.

APPEAL by respondent from *Godwin, Judge*. Order entered
20 November 1978 in Superior Court, WAKE County. Heard in the
Court of Appeals 20 September 1979.

Petitioner Arcadia Dairy Farms, Inc. (Arcadia), filed a peti-
tion in Superior Court appealing from an order of the North
Carolina Milk Commission (the Commission) assessing an equaliza-
tion payment against it and suspending its license as a milk
distributor for failure to pay said assessment. Arcadia sought
judicial review of the constitutionality of G.S. 106-266.8(3) and
Title 4, Section .0505 of Chapter 7 of the North Carolina Ad-
ministrative Code (hereinafter Rule 7.0505), adopted pursuant
thereto and pursuant to which the equalization payment was
assessed. Arcadia further alleged that even if the statute were
ruled to be constitutional, the equalization payment assessed by
the Commission was improper, because it did not take into con-
sideration Arcadia's costs of production and distribution and was,
therefore, arbitrary and capricious. The Commission admitted

assessing the equalization payment pursuant to G.S. 106-266.8(3) and Rule 7.0505 but denied that the assessment was invalid.

Rule 7.0505 requires a distributor of Class I recombined or reconstituted milk to pay the difference between the prices of Class I and Class II milk on reconstituted milk obtained from non-state based producers or other unapproved sources. The amount to be paid is determined by a two-step process. First, the total sales of Class I, IA, and IB milk to the distributor are added together, and the total amount of purchases from North Carolina based producers or other approved sources is subtracted. The difference is the volume for which equalization payment is due. Then, the difference between the prices of Class I and Class II milk is multiplied by the volume for which equalization payment is due to yield the total equalization payment assessed. The equalization payment is intended to combat the displacement of the sale of whole and low fat milk of other distributors by the reconstituted milk which is composed of a mixture of lacteal secretion, milk solids, and water. This displacement is caused by the ability of the distributor of reconstituted milk to purchase his raw materials at lower costs and thus sell his products at lower prices.

The Superior Court entered judgment as follows:

"2. That GS 106.266.8(3) [sic] is an unconstitutional delegation of legislative power to the Commission because it fails to establish adequate standards for the guidance of the Commission in providing for an equalization payment, i.e. determining the amount of the said 'equalization payment', and the same is therefore violative of Article II, Section I and Article I, Section 19 of the Constitution of the State of North Carolina.

3. That GS 106-266.8(3) insofar as the same provides that the Commission is vested with the power 'to provide for the pooling on a market-wide or state-wide plan the total utilization of license [sic] distributors, or may assign base and/or milk in order to obtain the highest utilization possible for producers and/or associations of producers supplying milk to the market,' and 4 NCAC 7.0505, insofar as the same provides that 'each distributor shall obtain a supply of packaged milk or fresh fluid milk from producers who hold a North

Carolina base, or from licensed distributors purchasing milk from producers who hold a North Carolina base, or other approved sources equal to its Class I, IA, and IB sales for each month or accounting period,' are unconstitutional, as unlawful burdens upon Interstate Commerce in violation of the Constitution of the United States, Article I, Section 8, Clause 3.

4. That 4 NCAC 7.0505 constitutes an unlawful burden upon Interstate Commerce in violation of the Constitution of the United States Article I, Section 8, Clause 3 as the same penalizes milk and milk products not obtained from North Carolina sources and therefore prevents the free movement of Grade A milk solids in Interstate Commerce (which said Grade A milk solids are not produced within the State of North Carolina).

5. That 4 NCAC 7.0505 is confiscatory and is a tax not enacted by the General Assembly in violation of Article I, Section 8 of the Constitution of North Carolina and further is a tax without adequate guide lines [sic] and standards for exercise of such delegated legislative power to tax.

6. That GS 106-266.8(3) (and 4 NCAC promulgated pursuant thereto) [sic] insofar as the same provide that 'the Commission may provide for an equalization payment in order that producer milk will not be paid for in a lower class through the recombining of water and milk constituents,' is in violation of the 14th Amendment to the Constitution of the United States and of Article I, Section 19 of the Constitution of the State of North Carolina as a deprivation of property without due process of law and in a manner contrary to the law of the land, and constitutes a taking of Arcadia's property without Arcadia's consent for a non-public [sic] use and without payment of just compensation.

7. That NCGS 106-266.8 and 4 NCAC 7.0505, insofar as the same purport to require or provide for equalization payments from a distributor of milk to producers furnishing milk to competing distributors is unconstitutional as the same is in violation of Article I, Section 32 of the Constitution of North Carolina providing that 'no person or set of persons is entitled to exclusive or separate emoluments or

privileges from the community but in consideration of public services.'

8. That NCGS 106-266.8(3) and 4 NCAC 7.0505, insofar as the same purport to provide for or allow the imposition of a [sic] 'equalization payment' are unconstitutional as the same are in violation of Article I, Section 34 of the Constitution of the State of North Carolina providing that 'perpetuities and monopolies are contrary to the genius of a free state and shall not be allowed' as the same has as it [sic] stated and intended purpose as set out in the findings of fact and conclusions of law the prohibition of competition of the reconstituted milk with whole milk furnished by producers within the State of North Carolina.

9. That NCGS 106-266.8(3) and 4 NCAC 7.0505, insofar as the same purport to provide for or allow the imposition of an 'equalization payment' as therein provided are unconstitutional as the same are in violation of Article V, Sections 2(1) and 2(2), as a tax levied in an unjust and inequitable manner and for a private purpose upon classifications established by the Commission rather than the General Assembly and further the same is in violation of Article V, Section 5 of the Constitution of the State of North Carolina.

10. That in addition NCGS 106-266.8(3) and 4 NCAC 7.0505, insofar as the same purport to provide for, or allow the imposition of, an 'equalization payment' are unconstitutional as the same are in violation of Article I, Section 1 of the Constitution of the State of North Carolina providing that citizens of the State of North Carolina are 'endowed by their Creator with certain inalienable rights; that among these are life, liberty, *the enjoyment of the fruits of their own labor*, and the pursuit of happiness' as the same is a penalty upon and a taking of the fruits of the labor of Petitioner with no compensation or benefit whatsoever in return.

UPON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS NOW, THEREFORE, ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. That GS 106-266.8(3) and 4 NCAC 7.0505, as amended November 10, 1977, insofar as the same purport to authorize

the requirement of equalization payments and to require that licensed distributors in the State of North Carolina first use whole milk obtained from producers holding North Carolina base or from distributors receiving whole milk from producers holding a North Carolina base, are null, void and of no effect.

2. That the North Carolina Milk Commission be and it is hereby permanently enjoined and restrained from enforcing 4 NCAC 7.0505, as amended November 10, 1977, and further said Milk Commission is permanently enjoined and restrained from enacting other rules or regulations requiring an equalization payment pursuant to GS 106-266.8(3).

3. That the Clerk of Superior Court pay the sums now in his possession pursuant to Interlocutory Stay Order previously entered in this cause to the Petitioner and that Petitioner be and it is hereby discharged from any obligation to pay any sums into an equalization fund in the future.

4. That the Commission pay the costs of this action to be taxed by the Clerk of the Superior Court of Wake County, North Carolina.

This the 20 day of November, 1978.

s / A. P. GODWIN, JR.
Judge Presiding"

The Commission appealed.

*W. C. Harris, Jr., for the North Carolina Milk Commission, appellant.*

*Long, McClure, Parker, Hunt & Trull, by Robert B. Long, Jr. and Gary A. Dodd, for Arcadia Dairy Farms, Inc., appellee.*

ERWIN, Judge.

The Commission contends that the trial court erred by failing to make any findings of fact in its order to support its conclusions of law. We do not agree.

G.S. 150A-51 provides in part: "If the court reverses or modifies the decision of the agency, the judge shall set out in

writing, which writing shall become a part of the record, the reasons for such reversal or modification." When the judge of the Superior Court sits as an appellate court to review the decision of an administrative agency pursuant to G.S. 150A-50, the judge is not required to make findings of fact and enter a judgment thereon in the same sense as a *trial judge* pursuant to G.S. 1A-1, Rule 52(a), of the Rules of Civil Procedure. *Markham v. Swails,* 29 N.C. App. 205, 223 S.E. 2d 920, *dis. rev. denied,* 290 N.C. 309, 225 S.E. 2d 829, *cert. denied,* 290 N.C. 551, 226 S.E. 2d 510, 429 U.S. 940, 50 L.Ed. 2d 310, 97 S.Ct. 356 (1976). The trial court reviewed the "whole record" which is the proper standard of judicial review as required by G.S. 150A-51. *Thompson v. Board of Education,* 292 N.C. 406, 233 S.E. 2d 538 (1977). The order of Judge Godwin was fully adequate to comply with the statute and the case law of our State. We find no merit in this assignment of error.

In the other assignment of error, the Commission contends that the trial court erred in concluding:

"(a) That N.C.G.S. 106-266.8 violates:

(1) Article I—Section 1, 19, 32, 34; Article II—Section I; and Article V—Sections 2(1), 2(2), 5 of the Constitution of North Carolina, and

(2) Article I—Section 8, Clause 3 of the Constitution of the United States; and

(b) That 4 NCAC 7.0505 violates:

(1) Article I—Sections 1, 8, 19, 32, 34; and Article V—Sections 2(1-2), 5; and

(2) Article I—Section 8, Clause 3 and 14th Amendment of the Constitution of the United States?"

G.S. 106-266.8 and G.S. 106-266.8(3), effective May 1977, provide:

"§ 106-266.8 *Powers of Commission.*—The Commission is hereby declared to be an instrumentality of the State of North Carolina, vested with power:

*        *        *

(3) To supervise and regulate the transportation, processing, storage, distribution, delivery and sale of milk for consumption; provided that nothing in this Article shall be interpreted as giving the Commission any power to limit the quantity of milk that any producer can produce nor the power to prohibit or restrict the admission of new producers. *To classify milk on the basis of use or form; to adopt or approve base plans for allocating classes of milk and to provide for the pooling on a market-wide or statewide plan the total utilization of licensed distributors, or may assign base and/or milk in order to obtain the highest utilization possible for producers and/or associations of producers supplying milk to the market; and the Comission may provide for an equalization payment in order that producer milk will not be paid for in a lower class through the recombining of water and milk constituents.*" (Emphasis added.)

Pursuant to the above statute, the Commission adopted its Rule 7.0505.

In *In re Dairy Farms*, 289 N.C. 456, 223 S.E. 2d 323 (1976), our Supreme Court was presented with the exact question which we have before us today. In *In re Dairy Farms, supra*, Arcadia was selling the same product as it is selling in the case *sub judice*. Similarly, the Commission had assessed an amount to be paid as an equalization payment. The only material difference in the two cases is the Legislature's amendment of the statute so as to grant the power now in question. Justice Lake, speaking for the Supreme Court, stated in *In re Dairy Farms, supra* at 469-71, 223 S.E. 2d at 331-32:

"Quite clearly, there is, at least, serious doubt that G.S. 106-266.8, if construed to authorize the Commission to require the distributor of milk, 'reconstituted' from Wisconsin milk powder, to make compensatory payments to North Carolina milk producers, can be reconciled with the Commerce Clause of the Constitution of the United States.

\*     \*     \*

Arcadia obtains nothing in return for the payment it is required to make by the order of the Commission. It is required to make such payment to its competitor distributors from whom it elected to purchase nothing, for the benefit of producers from whom it purchased nothing. Likewise, the Commission, by this order, has not undertaken to supervise or regulate the processing of 'reconstituted' milk or its sale. Its order has nothing whatever to do with the selection of the ingredients which go into Arcadia's 'reconstituted' milk and nothing whatever to do with Arcadia's method of processing such milk. The order leaves Arcadia free to sell its 'reconstituted' milk. There is no contention that such milk is not wholesome, that Arcadia is representing it to its customers as anything other than that which it is, or that Arcadia, in the sale of its 'reconstituted' milk is engaged in unlawful price cutting or other unfair trade practices. The sole purpose and effect of the Commission's order is to require Arcadia to pay to its competitors, for the benefit of producers with whom Arcadia has no dealings, an amount equal to the difference between the price those producers receive for the milk delivered to those distributors and the price they would have received for such milk had Arcadia purchased from those distributors the milk sold to them by those producers.

We note, in passing, that if Arcadia, instead of distributing 'reconstituted' milk, made from Wisconsin powder and North Carolina water, had elected to expand its own dairy herd and to distribute the natural milk derived therefrom, the effect on other producers supplying the Asheville area would have been the same. By the express language of G.S. 106-266.8(3) the Commission could not restrict Arcadia's right to do so. We find in the statute no indication of a legislative intent to empower the Commission to afford to other producers greater protection against competition from wholesome 'reconstituted' milk.

To interpret G.S. 106-266.8 as conferring upon the Commission power to require a distributor of 'reconstituted' milk to make such payments for the benefit of producers, with whom it has no dealings, would also give rise to serious doubt as to whether such exaction would be a violation of Ar-

ticle I, § 19, of the Constitution of North Carolina, which provides, 'No person shall be * * * in any manner deprived of his * * * property, but by the law of the land.' In *Insurance Co. v. Johnson, Commissioner of Revenue*, 257 N.C. 367, 126 S.E. 2d 92 (1962), this Court held that a tax levied upon fire and lightning insurance premiums to establish a pension fund for firemen was invalid for the reason that it was a tax imposed exclusively upon a 'particular group of insurance companies for the special benefit of a particular group of public employees. This Court quoted Mr. Justice Roberts, who said in *United States v. Butler*, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477 (1936), 'The word [tax] has never been thought to connote the expropriation of money from one group for the benefit of another.' In this respect, there is no distinction between a tax and the payment required by the order of the Commission."

We conclude that the foregoing is not only persuasive but controlling. For the reasons stated in *In re Dairy Farms, supra*, we affirm the order of the trial court.

Affirmed.

Judges VAUGHN and HILL concur.